Geraldine **BUCKHANON**, et al., Plaintiffs,

v.

Donald **PERCY**, et al., Defendants.

No. 81–C–1601.

United States District Court, E. D. Wisconsin.

Jan. 14, 1982.

Mary Fisher Bernet, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

Waltraud A. Arts, Asst. Atty. Gen., Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On December 21, 1981, plaintiffs instituted this action for declaratory and injunctive relief on behalf of a class of all persons in Wisconsin whose Aid to Families with Dependent Children (AFDC), Food Stamp (FS), and/or Medical Assistance (MA) benefits have been, are being, or will be denied, reduced or terminated without being provided an adequate written notice containing the specific reasons and computations requiring such action. Plaintiffs challenge the notices used to notify AFDC, Food Stamp and Medical Assistance recipients of denials, reductions or terminations of benefits claiming that the notices fail to provide them with adequate written notice in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Social Security Act, 42 U.S.C. §§ 601 *et seq.* and 1396 *et seq.*, the Food Stamp Act, 7 U.S.C. §§ 2011 *et seq.*, implementing federal regulations, and state law.

On December 30, 1981, counsel for the parties appeared in Court for a hearing on plaintiffs' motion for a preliminary injunction. At the conclusion of that hearing, the Court informed the parties that it would grant, in part, and deny, in part, plaintiffs' motion for class certification. In addition, it ordered the parties to submit to the Court additional memoranda addressing the adequacy of the notices sent on or about December 12, 1981 to those aid recipients whose aid was affected by the enactment of the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L.No.97–35, 95 Stat. 357 and corresponding changes in Wisconsin law, Ch. 93, Laws of 1981.

Plaintiffs and defendants submitted their supplemental memoranda to the Court on January 6, 1982 and January 7, 1982, respectively. On January 8, 1982, counsel again appeared in Court to set forth additional arguments. At the conclusion of that hearing, the Court took plaintiffs' motion for preliminary injunctive relief under advisement. Now, having considered the parties' briefs and arguments, the Court is prepared to rule on plaintiffs' motion. This memorandum and order constitutes the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

### I. *Stipulated Facts*

Prior to appearing in Court, the parties agreed to the following facts:

1. The State of Wisconsin participates in the AFDC and Medical Assistance programs described in Titles IV and XIX of the Social Security Act, 42 U.S.C. § 601 *et seq.* and § 1396 *et seq.*, respectively, through which the federal government partially reimburses participating states for the financial and Medical Assistance benefits provided to eligible families and for the costs of administration of the programs. Wisconsin also participates in the Food Stamp program described in the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, under which the federal government pays the costs of the benefits and a portion of the administrative costs.

2. As a condition of receiving federal funds, Wisconsin is required to operate AFDC, Food Stamp and Medical Assistance programs which conform with the requirements of the Social Security Act, the Food Stamp Act and implementing federal regulations.

3. State law has substantially the same provisions as federal law regarding notice to AFDC recipients, sec. 49.19(13), Stats. (1979), as amended by ch. 93, Laws of 1981.

4. Fair hearing requirements are governed by sec. 49.50(8), Stats. (1979), as amended by ch. 93, Laws of 1981, and section PW–PA 20.18 Wis.Adm.Code (1978).

5. AFDC cases in which benefits are denied, reduced or terminated due to an initial eligibility determination, a change in a client's circumstances or a redetermination of a client's eligibility require a notice

which is adequate if it meets the following requirement:

"Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested. 45 C.F.R. § 205.10(4)(i)(B).

6. AFDC cases in which benefits are reduced or terminated due to changes in federal and/or state law require a notice which is adequate if it meets the following requirement:

When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued. 45 C.F.R. § 205.10(4)(iii).

7. MA cases in which benefits are denied, reduced or terminated due to an initial eligibility determination, a change in a client's circumstances or a redetermination of a client's eligibility require a notice which is adequate if it meets the following requirements:

(a) A statement of what action the agency intends to take;

(b) The reasons for the intended action;

(c) The specific regulations that support . . . the action;

(d) An explanation of—

(1) The individual's right to request an evidentiary hearing if one is available, or a State agency hearing;

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested. 42 C.F.R. § 431.-210.

8. MA cases in which benefits are reduced or terminated due to changes in federal and/or state law require a notice which is adequate if it meets the following requirements:

(a) A statement of what action the agency intends to take;

(b) The reasons for the intended action;

(c) . . . the change in Federal or State law that requires the action;

(d) An explanation of—

. . . .

(2) In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested. 42 C.F.R. § 431.-206.

9. FS cases in which benefits are denied due to an initial eligibility determination require a notice which is adequate if it meets the following requirement:

*Notice of denial.* If the application is denied, the State agency shall provide the household with written notice explaining the basis for the denial, the household's right to request a fair hearing, the telephone number of the food stamp office, and, if possible, the name of the person to contact for additional information. If there is an individual or organization available that provides free legal representation, the notice shall also advise the household of the availability of the service. 7 C.F.R. § 273.10(g)(ii).

10. FS cases in which benefits are reduced or terminated due to a change in a client's circumstances or a redetermination of a client's eligibility require a notice which is adequate if it meets the following requirement:

All State agencies shall use a notice of adverse action form designed by FNS. FNS may approve deviations from that form under the same conditions deviations are granted for the application form, as specified in § 273.2(b). The notice of adverse action shall be considered

adequate if it explains in easily understandable language: The proposed action; the reason for the proposed action; the household's right to request a fair hearing; the telephone number and, if possible, the name of the person to contact for additional information; the availability of continued benefits; and the liability of the household for any overissuances received while awaiting a fair hearing if the hearing official's decision is adverse to the household. If there is an individual or organization available that provides free legal representation, the notice shall also advise the household of the availability of the service. 7 C.F.R. § 273.-13(a)(2).

11. In Wisconsin, all computations performed on client data when initial eligibility is determined, when a change in client data is processed or when eligibility is periodically redetermined are done by the Computer Reporting Network System (CRN) and are not performed manually at either the local or state levels.

12. When changes in federal and/or state law occur which affect eligibility, CRN processes all existing client data through new programs designed to implement the legal changes. No change is made in any client data. Changes of this type are referred to as "conversions."

13. Nineteen (19) separate changes required by OBRA and state law were incorporated by CRN on or about December 12, 1981, to be effective December 31, 1981.

14. Plaintiff Melissa Pflueger is an adult resident of Milwaukee, Wisconsin, who receives financial assistance under the AFDC program, Medical Assistance Benefits and Food Stamps for herself and her four minor children. Ms. Pflueger received a notice of termination dated October 16, 1981. The notice provided the following information:

a. Informed her that "effective October 31, 1981, your eligibility for financial assistance will terminate" (i.e., the action the agency intends to take.)

b. Told her the reason for the termination was: "You failed to furnish necessary information."

c. The specific law citation authorizing the agency's action. Both federal and state law are cited.

d. An explanation of her right to a hearing and the circumstances under which aid will be continued pending a hearing.

15. Melissa Pflueger's case was not affected by conversion processing conducted on or about December 12, 1981.

16. Plaintiff Geraldine Buckhanon is an adult resident of Milwaukee, Wisconsin, who receives financial assistance under the AFDC program, Medical Assistance Benefits, and Food Stamps for herself, her husband and four minor children.

17. Prior to November 13, 1981, Geraldine Buckhanon was eligible for assistance as a member of an AFDC–U household.

18. Sometime between October 19, 1981, and November 13, 1981, Milwaukee DSS received a WIN status change notice indicating Geraldine's husband was employed full-time as of October 14, 1981, at $3.65 an hour.

19. On November 13, 1981, the caseworker called the client and explained to her that she would no longer be eligible for AFDC–U because her husband was employed. She might, however, be eligible for stepparent aid. The client elected to be considered for stepparent aid. This fact was recorded in the case record.

20. On November 13, 1981, the caseworker acted in response to the client's wishes and processed a change. A notice of decision generated by CRN was sent to the client. A copy is attached to her affidavit as Exhibit A.

21. On November 13, 1981, the caseworker also sent a handwritten notice to the client informing her that she would no longer be eligible for AFDC–U. This notice stated in part: "Your husband is now employed and you are now only eligible for stepfather aid for your children. Your (Geraldine's only) wages are budgeted, but you do not get 30⅓ exempt allowance only

18% for expenses." The worker had to issue this notice manually because a termination in CRN was not processed due to the client's request that the case not be terminated.

22. On December 1, 1981, Geraldine Buckhanon received a grant of $31.31.

23. On November 20, 1981, a change was processed by the CRN system. The work-related expense information was changed. In addition, the allocation of income information which is required for stepparent aid, and which was used to determine the grant level of $31.31, was entered on the wrong line of the CRN system. The result of this improper entry was to generate a case decision sheet which recorded the grant as increasing from $31.31 to $225.64.

24. The caseworker received the case determination sheet and discovered the error. A new change was processed to correct the error on November 25, 1981. The error was not properly corrected, however.

25. The case determination sheet generated by the November 25, 1981, change was reviewed by the caseworker and the second error was discovered.

26. On December 1, 1981, a change was processed to correct the error. The income allocation was corrected by this change. The resulting amount of the grant was $56.96.

27. This case was not effected by the conversion on December 12, 1981.

28. Ms. Buckhanon had the right to have her aid continued at pre-reduction levels pending the outcome of a hearing at which she could contest any facts affecting her case.

29. Defendant Donald E. Percy is the Secretary of the Wisconsin Department of Health and Social Services (DHSS) and as such is charged under the Wisconsin Statutes with supervision of the administration of the AFDC, Food Stamp and Medical Assistance programs in Wisconsin. Secs. 46.03(8), 46.206(1)(a), 49.45 and 49.50(2), Stats. (1979–80). His duties include promulgating and implementing regulations to insure compliance by the DHSS with the provisions of Title IV and XIX of the Social Security Act, the Food Stamp Act and applicable federal regulations. Secs. 46.03(23) and 49.50(2), (6), Stats. (1979–80).

30. Defendant Bernard J. Stumbras is the Administrator of the Division of Economic Assistance of DHSS and as such is charged with the supervision of the administration of the AFDC, Food Stamp and Medical Assistance programs in Wisconsin in conformity with the provisions of the Social Security Act, the Food Stamp Act, the applicable rules and regulations of the federal government and the State of Wisconsin. His duties include responsibility for the development and issuance of manuals and instructions implementing the AFDC, Food Stamp and Medical Assistance programs in accordance with applicable federal and state law.

31. Defendant Kenneth Rentmeester is the Administrator of the Division of Health of DHSS and as such is charged with part of the supervision of the administration of the Medical Assistance program in Wisconsin in conformity with the provisions of the Social Security Act and implementing rules and regulations of the federal government and the State of Wisconsin.

32. Defendants Percy, Stumbras and Rentmeester and all other defendants have been, are presently and will continue to be acting under color of authority and law of the State of Wisconsin in providing notices to plaintiffs.

## II. *Class Certification*

In their motion for a class certification, plaintiffs requested leave to represent:

All persons in Wisconsin whose AFDC, Food Stamp and/or Medical Assistance benefits have been, are being or will be denied, reduced or terminated without being provided an adequate written notice containing the specific reasons for and computations requiring such action.

Plaintiffs contended that the individual named plaintiffs met the requirements of Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure and asked the Court to allow this action to be maintained as a class action pursuant to Rule 23(b)(2).

Defendants opposed the motion. They contended that the representative parties' claims did not involve "questions of law or fact common to the class" as required by Rule 23(a)(2). They also argued that the representative parties were not typical of the class as required by Rule 23(a)(1). In addition, they maintained that class certification under Rule 23(b)(2) was unnecessary because any relief afforded to the individual plaintiffs could be afforded to individuals similarly situated under the principle of *stare decisis.*

In reviewing the affidavits of the four individual plaintiffs and their *Notice of Decision* forms, the Court noted that only two of the individual plaintiffs—Rosetta Bailey and Mary Green—were affected by the OBRA changes. The other two individual plaintiffs—Geraldine Buckhanon and Melissa Pflueger—were not affected by the OBRA changes. Rather, the *Notice of Decision* forms they received reflected changes which were generated by changes in their individual situations. Consequently, the Court divided plaintiffs' proposed class into two groups: those individuals who received notices informing them of an aid reduction or termination brought about by OBRA ("the conversion plaintiffs"), and those individuals who received notices informing them of an aid reduction or termination brought about by changes in their individual situations ("the non-conversion plaintiffs").

The Court had no difficulty in finding the class of conversion plaintiffs so numerous that joinder of all members would be impractical. Rule 23(a)(1). Nor did it have any difficulty in finding that the representative parties would fairly and adequately protect the interests of the class of conversion plaintiffs. Rule 23(a)(4).

The defendants contended that questions of law or fact common to the class of conversion plaintiffs did not exist because three different programs (*i.e.,* AFDC, FS, MA) are involved in this action. The Court rejected this argument after finding that the issues presented in this suit relate to the *notices* given to terminate or reduce bene-

fits under these programs, and not to the programs themselves. Because the notice "foldout" (attached to this memorandum and order as Exhibit 1) was sent to all conversion plaintiffs, and because plaintiffs were primarily challenging the use of this foldout, the Court found questions of law common to the subclass of conversion plaintiffs exist. Rule 23(a)(2). In addition, the Court found the claims of plaintiffs Rosetta Bailey and Mary Green to be typical of the claims of the subclass of conversion plaintiffs. Rule 23(a)(2).

The Court also found that the requirements of Rule 23(b)(2) were satisfied because the defendants had acted on grounds generally applicable to the subclass of conversion plaintiffs. Also, because injunctive relief would require defendants to send new notices to some or all class members, the Court rejected defendants' contention that the principle of *stare decisis* rendered class certification unnecessary. Accordingly, the Court granted plaintiffs' motion for certification of a class insofar as it pertained to the conversion plaintiffs.

With respect to the non-conversion plaintiffs, the Court held that the plaintiffs had not demonstrated that the claims of plaintiffs Buckhanon and Pflueger were typical of a subclass consisting of all individuals whose aid had been reduced, denied or terminated as a result of changes in individual circumstances. Accordingly, the Court denied plaintiffs' motion for class certification insofar as it related to that group.

■ After dividing plaintiffs' proposed class into two subgroups and after granting, in part, and denying, in part, plaintiffs' motion for class certification, the Court ordered plaintiffs to draft an order identifying the conversion class. On January 8, 1982, plaintiffs submitted a proposed order which identified the class as follows:

All persons in Wisconsin whose AFDC, Food Stamp and/or Medical Assistance benefits have been, are being or will be denied, reduced, or terminated on account of the implementation of the Omnibus Budget Reconciliation Act without being provided adequate written notice contain-

ing the specific reasons for and computations requiring such action.

Defendants contend the plaintiffs' revised class identification is overbroad because it includes aid recipients who have yet to receive notices informing them of a reduction, denial or termination of benefits brought about by OBRA. Defendants contend the subclass of conversion plaintiffs should consist only of those individuals whose benefits were reduced or terminated as a result of the conversion which took place on December 12, 1981.

The Court agrees with defendants that plaintiffs' revised class identification goes beyond the scope of the Court's December 30, 1981 order. Because the State has not yet developed notices regarding those OBRA changes which were not included in the December 12, 1981 conversion (e.g., AFDC/MA strike policy), the Court is of the opinion that it should not at this time interfere with the defendants' attempts to develop adequate notices for those changes. In addition, because the foldout notices were sent only to present aid recipients to explain the changes in the law, the Court is of the opinion that the claims of applicants who have applied for, but been denied aid as a result of the new law, raise issues different from those issues raised by recipients who received the foldout notices. Accordingly, the class certified by the Court will not include these individuals.

Based on the foregoing, the Court rejects plaintiffs' revised class identification. Rather, the Court shall consider the claims of:

> All persons in Wisconsin whose AFDC, Food Stamp, and/or Medical Assistance benefits have been or are being reduced or terminated as a result of the implementations of those provisions of the Omnibus Budget Reconciliation Act which are reflected in the foldout and accompanying notices generated by the defendants' December 12, 1981 conversion.

### III. Motion for Preliminary Injunction— Conversion Class

A preliminary injunction may not be granted unless it is shown that:

> (1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (2) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendants; (3) the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) the granting of a preliminary injunction will not disserve the public interest. *Fox Valley Harvestore v. A. O. Smith Harvestore Products*, 545 F.2d 1096, 1097 (7th Cir. 1976).

Plaintiffs bear the burden of showing that each of these prerequisites to injunctive relief is satisfied. The Court will begin its analysis by determining whether plaintiffs have demonstrated at least a reasonable likelihood of success on the merits of their claims.

### A. Likelihood of Success

Plaintiffs contend that the notices sent to aid recipients after the December 12, 1981 conversion fail to indicate the specific reasons for the State's actions, the substance of any applicable statutory or regulatory authority, the information relied upon for taking the actions and the calculations supporting the actions. Plaintiffs further contend that the defendants' use of these notices has denied them the opportunity to understand, determine the accuracy of and make knowledgeable decisions as to whether they should challenge the defendants' actions. Plaintiffs also contend they are being forced to choose between failing to appeal incorrect reductions or terminations of benefits, and risking recoupment of such benefits if they fail to appeal what turns out to be a correct decision. Finally, plaintiffs contend the foldout accompanying the defendants' notices is confusing and contains too much unnecessary information.

Defendants argue it was not necessary for them to provide calculations with the conversion notice. Because the December 12, 1981 conversion merely required them to design new programs to implement OBRA and corresponding Wisconsin law changes,

ch. 93, Laws of 1981, and to process that information along with existing client data through the computer, defendants contend the conversion resulted in no factual errors. Therefore, they maintain, it was unnecessary for them to include any calculations in the notices.

Defendants also contend that the notices were adequate because they met the requirements set forth in the Code of Federal Regulations for conversion notices. The Court will not specifically address this contention because the Court construes the code regulations as requiring compliance with the requirements of due process.

In determining the adequacy of the conversion notices at issue in this action, the Court will rely on three decisions from the Seventh Circuit Court of Appeals: *Vargas v. Trainor,* 508 F.2d 485 (7th Cir. 1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975); *Banks v. Trainor,* 525 F.2d 837 (7th Cir. 1975), *cert. denied* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); and *Dilda v. Quern,* 612 F.2d 1055 (7th Cir. 1980), *cert. denied* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980).

In *Vargas,* aged, blind and disabled recipients of aid from the Illinois Department of Public Aid under Title XVI of the Social Security Act, 42 U.S.C. § 1381–85 filed suit to challenge the sufficiency of the notice used to inform them of reductions or terminations of benefits. The court of appeals held that the notice of proposed termination or reduction in aid did not comport with procedural due process because it did not give reasons for the proposed action. 508 F.2d at 489. In reaching that decision, the Court rejected the defendants' contention that the notice met due process standards because it advised the recipient that he could learn the reason for the proposed reduction or termination of benefits by contacting his caseworker. *Id.*

In *Banks,* food stamp recipients in Illinois filed suit to challenge the adequacy of the notice informing them of reductions of food stamp benefits brought about by a change in the method used for calculating benefits. That change, like the changes in the case at bar, was triggered by a change in the law. Plaintiffs sought and obtained a preliminary injunction from the district court enjoining defendants from reducing the food stamp benefits of the members of the plaintiff class "until such time that the members of the plaintiff class are provided with adequate advance notice of the reasons for the proposed reduction, including a full statement of all income and deductions therefrom, taken into account in determining net food stamp income." The defendant attempted to comply with the district court's order by conducting a face-to-face interview with each food stamp recipient affected by the change in the law to secure and to calculate food stamp income under the new method. After the recipient completed a two-page application for food stamps, the case-worker computed the recipient's income and deductions to arrive at a net food stamp income figure. Those members of the plaintiff class whose food stamp benefits were to be reduced on the basis of information obtained in the interview were then to be sent a notice containing the following statement:

> Your eligibility for food stamps has been redetermined and your net food stamp income has been computed. Your purchase requirement will be based on the net income basis of issuance as required by federal regulation (7 CFR 271.-3).

Upon motion of the plaintiffs, the district court also found this notice insufficient.

On appeal, the Seventh Circuit Court of Appeals affirmed. It stated:

> The Notices sent to this class did not contain a breakdown of income and deductions so that the recipients could determine the accuracy of the computations. Since the Notices do not inform recipients of what factors are relevant in determining net food stamp income, the plaintiff class cannot inform caseworkers of expenditures that should be used. Similarly, the plaintiff class was not informed by chart or otherwise of the allotment and purchase prices for different size households based on their food stamp

income, so that members of the class can ascertain whether they are receiving the correct amounts of coupon allotment.

Both *Goldberg* [v. *Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)] and *Vargas* require detailed notice of adverse action as a protection against agency error and arbitrariness. Because the calculation of food stamp benefits under the income method requires an individualized determination of income, expenses and deductions for each recipient, due process requires full and adequate prior written notice. 525 F.2d at 842.

Finally, in *Dilda*, a 1980 case, welfare recipients brought suit to challenge the practice of the Illinois Department of Public Aid of reducing or cancelling benefits under Title IV of the Social Security Act, 42 U.S.C. § 601 *et seq.*, through "rebudgeting" without notifying them of the method by which the revised reduction or cancellation was calculated. The district court found the defendants' original notice inadequate under the due process clause for failing to include an explanation of how and why the plaintiff's AFDC grant was recomputed. Pursuant to the district judge's order, the defendant submitted and the court approved the following forms of notice:

DEDUCTIONS

Your increased earned income from _____ (new net amount after deductions $_____) is being applied to your needs. Your increased earned income (new net amount after deductions— $_____) is being applied to your needs.

CANCELLATIONS

Because of your increased unearned income from _____ (new amount— $_____) your income now exceeds your income maintenance needs.

Because of your increased earned income (new gross amount before deductions— $_____), your income now exceeds your income maintenance needs. *Id.* at 1056.

On appeal, plaintiffs contended that the defendants' notice failed to comport with certain federal regulations and due process. They argued that the defendants' notice

should have included a copy of the worksheets upon which the defendants based their decisions. The court of appeals agreed with the plaintiffs. Even though the notice stated the ultimate reason for the reduction or cancellation of benefits, the court of appeals found it did not comport with due process. The notice's major flaw, according to the court, was its failure to provide the recipient with a breakdown of income and allowable deductions. Accordingly, it ordered defendants to include photocopies of their workpapers with the notices informing recipients of a reduction or termination of benefits.

In the case at bar, the notice and accompanying foldout were used to explain numerous changes in the law. Because the information provided to recipients depended in large part on which OBRA provision affected them, it will be necessary for the Court to examine the OBRA changes separately. However, before examining each of the changes brought about by OBRA, the Court will address the plaintiffs' contention that the foldout and notice are inadequate because they are confusing and contain too much unnecessary information.

The Court agrees with the plaintiffs that the foldout is confusing and contains too much unnecessary information. The notice accompanying the foldout does not inform the recipient which section of the foldout affects his level of aid. Therefore, the recipient must read the entire foldout to determine which section applies to him. Furthermore, because the notice does not refer to a specific section of the foldout, it is conceivable that a recipient could read through the entire foldout and not know which section or sections affect him.

The Court is not of the opinion, however, that the confusing nature of the layout or the presence of unnecessary information renders the defendants' entire December 12, 1981 conversion invalid. In some instances, a recipient could determine the exact reason for a change in the level of benefits. Therefore, the Court will look at each of those changes in the law brought about by OBRA which are reflected in the foldout to

determine whether the section of the notice pertaining to each change is so confusing, contains so much unnecessary information or lacks so much necessary specific information that it violates due process.

As indicated in the parties' stipulated facts, nineteen (19) separate changes required by OBRA and state law were incorporated by CRN on or about December 12, 1981, to be effective December 31, 1981. A short description of these nineteen changes is attached to Bernard J. Stumbras' December 28, 1981 affidavit as exhibit A. The Court will refer to the changes using the same numbering system as Mr. Stumbras used.

It will not be necessary for the Court to discuss each of the nineteen changes listed on the Stumbras affidavit. Plaintiffs acknowledge change 14 is not at issue in this action because it is not an OBRA change. Plaintiffs also acknowledge changes 15 through 19 are not at issue because they did not generate computer notices to aid recipients. (Plaintiffs' 1–6–81 memorandum, p. 19.)

One other change need not be discussed. Change 5, which pertains to the new strike policy for AFDC and MA recipients, will result in no denials of aid until after January 31, 1982 because a recipient must be on strike on the last day of the month, *i.e.,* January 31, 1982, in order to be denied benefits. Because this change was not reflected in the notices or foldout sent out after the December 12, 1981 conversion, it is not included in the plaintiffs' class.

The Court will now address the other changes.

*Change 1. AFDC 150% gross income test.*

■ This OBRA provision excludes from AFDC benefits those persons whose gross earned income exceeds 150 percent of the state's assistance standards for families the size of the recipient's family. If an AFDC recipient had his aid terminated as a result of this provision, his notice from the defendants stated "Income is $_____ above limit allowable for eligibility. 49.19(5)(a) Stats, 45 CFR 233.20(a)(3)," or "Income ex-

ceeds the gross income limit. 49.19(4)(es), Stats., 45 CFR 233.20(a)(3)(xiii)."

Section 1 of the foldout summarizes the change in the law and also informs the recipient that in computing his gross income, the state did not count Supplemental Security Income (SSI) Payments, payments made under the low income Energy Assistance Program, Food Stamps "and other benefits when federal law says that the benefit may not be counted as income for a welfare program." In addition, section 1 of the foldout contains a table showing the maximum monthly gross income limit by family and area.

Plaintiffs contend the notice and accompanying foldout do not contain enough case specific information for the recipient to determine the accuracy of a determination of eligibility. Specifically, they contend the notice and foldout are insufficient because they do not indicate:

a. the amount of the individual's gross earned income used to make the determination;

b. the month in which that gross income was received;

c. the number of persons in the household for which eligibility is being determined; and

d. the gross income standard applied to the family; and

Plaintiffs further contend that those notices informing recipients only that their "income exceeds the gross income limit" are insufficient because they do not give the amount by which the individual's gross earned income exceeds the limit.

The Court finds the plaintiffs' objections valid. Because the foldout does not indicate the recipient's geographic area, the amount of gross income upon which the defendants based their decision and the month in which the gross income was received, it would be impossible for a recipient, even if he knew the number of persons the defendants used to calculate his aid eligibility, to determine the accuracy of the agency's decision.

**834**

Based on the foregoing, the Court finds plaintiffs have demonstrated a reasonable likelihood of success on their claim that the OBRA notices setting forth the new 150 percent income test fail to comport with due process.

*Change 2. AFDC/MA $75 Earned Income Deduction.*

■ This OBRA provision limits the amount of earned income which may be disregarded as work-related expenses. Previously, a recipient's actual work-related expenses could be deducted from gross income to determine eligibility for AFDC. Under the new law, persons who work full-time (*i.e.*, 30 hours or more per week) will be allowed a standard work expense disregard of $75.00. Persons who work part-time (*i.e.*, less than 30 hours per week) will be allowed a deduction of 18 percent of gross income or $75.00, whichever is less.

Individuals affected by the new standard allowance were provided a notice and foldout. If their AFDC grant was reduced as a result of the standard deduction, the notice read "Allowable work-related expenses are less. 49.19(5)(a)2., Stats. 45 C.F.R. 233(20)(a)(11)." If the standard deduction caused the case to be terminated from AFDC, the notice read "Income is $_____ above limit allowable for eligibility. 49.19(5)(a), Stats., 45 C.F.R. 233.-20(a)(3)." The actual amount of excess was included.

Because the $75.00 earned income deduction for work expenses is used to compute a recipient's adjusted net income, plaintiffs contend proper notice must include not only a breakdown of the income and deduction amounts relied upon but the calculations used to determine an individual's AFDC grant amount as well. They maintain it is impossible for a recipient to determine the accuracy of the defendants' actions unless he knows the gross income figure used or the calculations made to compute eligibility. They further contend that part-time workers received inadequate notice because the notices they received did not indicate the actual amount of work expenses which were deducted from gross income.

Defendants maintain that the notices sent to each recipient directed the recipient to section 2 of the foldout. Because section 2 of the foldout explains the use of the disregard for full-and-part-time employment and defines full-and-part-time employment, they contend the notice was adequate.

Contrary to defendants' assertion, nothing in defendants' notice refers a recipient to section 2 of the foldout. Consequently, a recipient whose aid was terminated because his work-related expenses exceeded the legal maximum and whose notice stated "income is $_____ above limit allowable for eligibility," would not have known whether his aid termination was "keyed" to section 1, 2 or 3 of the foldout.

The Court also rejects the State's contention that no individualized calculations were necessary to accomplish the conversion resulting from section 2. To complete the conversion, the State had to create a program capable of applying the new law to the individual data supplied by each recipient. Therefore, while no human input was necessary once the program was created, the computer had to "individually" examine each recipient.

In light of the foregoing, the Court finds that plaintiffs have demonstrated a reasonable likelihood of succeeding on their claim that the "section 2" foldout notices fail to comport with due process.

*Change 3. AFDC Vehicle Policy.*

*Change 4. Medical Assistance Vehicle Policy.*

■ Prior to the enactment of OBRA, no more than two motor vehicles could ordinarily be disregarded as assets for purposes of determining eligibility for AFDC and MA. Under the new law, equity value over $1,500.00 in a first vehicle is included in a recipient's asset limit, as is all equity value in other vehicles.

Individuals affected by these sections were told on their notice that "Assets are $_____ above allowable limit. 49.-14(4)(bm), 49.46(1)(a)1., Stats., 45 C.F.R.

233.20(a)(3)." The exact amount of excess was stated. Section 5 of the foldout explains the asset limit and the new vehicle policy. It defines first vehicle and equity value and tells recipients to contact their case aide to obtain the equity value of their vehicles.

Plaintiffs contend that the notices used for these sections are inadequate because they contain no indication whatsoever that it is the individual's equity in an automobile which has rendered him ineligible for AFDC and/or MA benefits. In addition, plaintiffs contend the notices are inadequate because they fail to provide case-specific information such as equity value.

The Court finds the plaintiffs' arguments persuasive. Because neither the notice nor the foldout informs the recipient that it is the equity value of his car which has pushed his assets over the asset ceiling, a recipient affected by these sections may not know that it is the value of his car which led to the termination of eligibility.

The Court is also of the opinion that due process is not satisfied by merely defining equity value and informing a recipient that he can obtain the equity value as computed by the State by contacting his caseworker. Determination of equity value of an automobile requires individual analysis of each recipient's car. Consequently, due process requires each recipient be told of the figures utilized to compute equity.

That section 5 informs recipients they can obtain the equity value by contacting a caseworker does not render the notice valid. A referral to the welfare department for the specific information relied upon in an individual's case is insufficient to meet due process standards. *Vargas*, 508 F.2d at 489.

The Court also notes that neither the notice nor foldout indicates how the State computed the market value of a recipient's automobile. Without this information, a recipient has no way of knowing the basis for the defendants' decision.

Based on the foregoing, the Court finds that plaintiffs have demonstrated a reasonable likelihood of succeeding on their claim that the notices setting forth the new AFDC/MA vehicle policy fail to comport with due process.

*Change 5. AFDC/MA Strike Policy.*

The Court has previously determined that no class members have been affected by this OBRA provision. Accordingly, the Court need not analyze this change at the present time.

*Change 6. $1,000.00 Asset Limit for AFDC/MA benefits.*

Prior to the enactment of OBRA, the asset limit for AFDC and MA recipients was $1,500.00. Under the new law, this limit is $1,000.00.

Individuals affected by this change in the law were sent notices which stated: "Assets are $_____ above limit allowable. 49.-19(4)(bm); 49.46(1)(a)1., Stats.; 45 C.F.R. 233.20(a)(3)." Recipients were given the exact amount of asset overage. Section 5 of the foldout explains the new asset limit and the change from the old law.

Plaintiffs contend this type notice is inadequate because it fails to include a definition of the term "asset," the nature of the asset which was relied upon to disqualify the family for AFDC and the value of the asset which rendered the family ineligible for AFDC.

The Court rejects plaintiffs' contention that the word "asset" is confusing or difficult to understand. The defendants cannot be expected to inform recipients of complex changes in the law without using words understandable to an ordinary layman with a sixth grade education.

The problem with the notice used to inform recipients of changes in the asset limitation lies in the language of section 5 of the foldout. If that section did not summarize *both* the change in the asset ceiling and the change for vehicle treatment, a recipient with assets over $1,000.00 would know why his aid was terminated. Because the notice informs recipients of the amount by which their assets exceed the $1,000.00 limit, a recipient could also determine—by adding $1,000.00 to the figure supplied to him by defendants—the value of his assets as computed by the defendants.

Unfortunately, section 5 of the foldout relates to both the new asset ceiling and the change in vehicle policy. Consequently, a recipient notified that his benefits were being terminated because his "assets are . . . above allowable limit," might not know the basis of the State's action.

Based on the foregoing, the Court finds that plaintiffs have demonstrated a reasonable likelihood of succeeding on their claim that OBRA notices setting forth the new asset ceiling failed to comport with due process.

*Change 7. Lump Sum Payment.*

Under this provision, families who receive any lump sum payment of income other than that which has been budgeted against their regular AFDC grant will be considered ineligible for AFDC benefits for a period of time determinable by dividing the amount of that payment by the amount of the family's AFDC assistance standard. In addition, the amount of the lump sum payment will be included in the assets of MA and FS recipients.

The capability to enter lump sum payments as unearned income for AFDC and assets for medical assistance and food stamp was placed in CRN on or about December 12, 1981. Although the capability was entered that date, this provision was not part of the December 12, 1981 conversion, and was not reflected on the foldout. Consequently, defendants contend this provision does not fall within the certified class.

The Court agrees. The class certified by the Court includes only those recipients who were affected by the December 12, 1981 conversion and who received the defendants' foldout. Accordingly, the Court will not consider this provision at this time.

*Change 8. AFDC Dependent Adult/Child Care.*

*Change 12. MA Dependent Adult/Child Care.*

■ Prior to the enactment of OBRA, actual reasonable child care expenses were deducted from earned income to determine eligibility for AFDC. OBRA substitutes a maximum deduction of $160.00 per month per child for a recipient who is employed full time and a maximum deduction of $120.00 per month per child for a recipient employed part time. This change also applies to MA recipients.

If a recipient's AFDC grant was reduced as a result of the new child care provisions, he received a notice containing the following statement: "Child care costs are less/unneeded. 49.19(5)(a)3., Stats.; 45 C.F.R. 233.20(a)(11)." Those recipients whose AFDC was terminated as a result of these provisions received a notice which stated: "Income is $_____ above limit allowable for eligibility. 49.19(5)(a), Stats.; 45 C.F.R. 233.20(a)(3)." The exact amount of excess was listed. Those recipients whose MA was terminated as a result of these provisions received a notice which stated: "Income is $_____ above limit allowable for eligibility." 49.46(1)(a) or 49.-47(4)(c), Stats.; 42 C.F.R. 435.700 and 435.-711." The exact amount of excess was listed. Section 3 of the foldout summarizes these changes in the law.

Plaintiffs contend the notice pertaining to these provisions is inadequate. Because the amount of child care costs is a deduction, the amount of which depends on the facts of each case, plaintiffs argue that due process requires the following case specific information:

a. Whether the agency considers the individual a full-time or part-time worker;

b. the actual amount of child care expenses used in determining the child care deduction;

c. number of children requiring child care;

d. the amount of the child care deduction applied in the recipient's case; or

e. the calculations used in the individual's case to compute eligibility or amount of benefits.

The Court agrees with plaintiffs that the changes engendered by these OBRA provisions are changes which require case specific information. Defendants' failure to pro- ·

vide recipients affected by these sections with case specific information makes it impossible for a recipient to know exactly how defendants reached their decision.

Based on the foregoing, the Court finds that plaintiffs have demonstrated a reasonable likelihood of succeeding on their claim that those recipients whose aid was terminated or reduced as a result of these provisions were denied due process.

*Change 9. AFDC Four Month $30.00 and ⅓ Earned Income Disregard.*

■ This OBRA provision reduces the $30.00 plus ⅓ earned income disregard by applying it to net income (*i.e.*, gross income less child care and work expense deductions) rather than to gross income as formerly done. In addition, the earned income disregard is now terminated after four months. At the end of four months, the deduction is no longer applied to reduce the family's budgetable earned income. Section 4 of the foldout summarizes the changes in the law.

In their supplemental memorandum, defendants state that no notices pertaining to this section have been mailed, apparently because the earliest date this section can be implemented is four months after October 1, 1981—the date OBRA was enacted.

Because defendants have not yet implemented this OBRA section or developed a notice pertaining to this section, the Court is of the opinion that judicial intervention at this time in the drafting of a notice would be premature. It should be noted, however, that the Court's refusal to interfere at this time with the OBRA provision discussed in this section is based on defendants' representation that no recipients have been affected by this OBRA change. The Court interprets defendants' statement in their supplemental memorandum as indicating that neither the four month limitation *nor* the net income provision is in effect at this time.

Based on the foregoing, the Court finds that no class members have been affected by this provision. Accordingly, the Court denies at this time plaintiffs' request for preliminary injunctive relief with respect to those OBRA changes discussed in section 4 of the foldout.

*Change 10. MA Maternity Care.*

*Change 11. AFDC Maternity Care and pregnancy allowance.*

■ Under this OBRA provision, a pregnant woman with no other children becomes eligible for AFDC only after the beginning of her seventh month of pregnancy. Beginning at the seventh month of pregnancy, the woman receives $60.00 in addition to the grant she would be receiving for herself. If a pregnant woman has other dependent children, and is otherwise eligible for AFDC, she will receive the monthly allowance of $60.00 beginning in her seventh month of pregnancy. In the MA program, an unmarried woman with no other children may be eligible for MA after her pregnancy is verified if she meets financial eligibility requirements for AFDC.

Those AFDC recipients whose aid was terminated or reduced as a result of these provisions received a notice which stated one of the following: "Pregnancy is not in month 7, 8 or 9. 49.19(4)(g); 49.47(4)(a)2.; 49.46(1)(a) 1m, Stats."; or "Pregnancy allowance has been reduced. Sec. 49.19(4)(g), Stats."; "The pregnancy allowance no longer applies. Sec. 49.19(4)(g), Stats." Those MA recipients whose aid was terminated or reduced as a result of these provisions received a notice which stated one of the following: "Is not aged, blind, disabled or under 18. 49.47(4)(a), Stats."; "No person is determined eligible. 49.19(4)(g); 49.-47(4)(a)"; or "Pregnancy is not in month 7, 8 or 9. 49.19(4)(g); 49.47(4)(a)2.; 49.-46(1)(a)1m, Stats." Section 6 of the foldout summarizes the changes in the law.

Plaintiffs contend the foldout and notices pertaining to these OBRA provisions are inadequate because they do not clearly indicate that every pregnant woman in at least her seventh month of pregnancy is eligible for $60.00 in addition to her regular grant, and because they fail to advise the reader that MA eligibility begins as soon as pregnancy is confirmed and not in the seventh month of pregnancy.

The Court rejects plaintiffs' contention that section 6 and the corresponding notice are inadequate. When read together, the foldout and notice inform the aid recipient of the defendants' proposed action and the reason for the action. Moreover, these OBRA provisions, unlike many of the provisions previously discussed, do not require mathematical calculations. Consequently, the likelihood that an error occurring is less and the likelihood of an error being discovered by a recipient is greater.

Based on the foregoing, the Court concludes that plaintiffs have not demonstrated a reasonable likelihood of succeeding on their claim that the defendants denied plaintiffs due process when they informed aid recipients of the OBRA provisions discussed in section 6 of the foldout.

[*Change 12. Previously discussed.*]

*Change 13. 18–21 year olds ineligible for MA.*

■ Under this OBRA provision, low income individuals between the ages of 18 and 21 are no longer eligible for MA simply on the basis of their age. Rather, to maintain eligibility an individual must meet the income and asset limitations and fall into one of the categories listed in section 7 of the foldout, which summarizes the change in the law. Those recipients affected by this provision received, along with the foldout, a notice informing them that aid was being terminated because "He/She is 18–21 years old. 49–47(4), Stats."

Because section 7 of the foldout adequately explains the change in the law and because the change requires no mathematical calculations, the likelihood of an error occurring is less and the likelihood of an error being discovered by a recipient is greater. Accordingly, the Court finds that notice and foldout adequately inform the aid recipient of the defendants' action and the reasons for that action.

Based on the foregoing, the Court concludes that plaintiffs have failed to demonstrate a reasonable likelihood of succeeding on their due process claim relating to OBRA provisions discussed in section 7 of the foldout.

In summary, the Court has found that plaintiffs have demonstrated a reasonable likelihood of succeeding on their due process claims arising from the adequacy of the notices pertaining to reductions or terminations of aid resulting from the following OBRA provisions:

1. 150% Gross Income Test
2. $75.00 earned income deduction
3. AFDC Vehicle Policy
4. MA Vehicle Policy
6. $1,000.00 Asset Limitation
8. AFDC Child Care
12. MA Child Care

In addition, the Court has found that plaintiffs have not demonstrated a reasonable likelihood of succeeding on their due process claims arising from the following OBRA provisions:

5. AFDC/MA Strike policy
7. Lump Sum Payment
9. AFDC 4 month $30.00 plus ⅓ income deduction
10. MA Maternity Care
11. AFDC Maternity Care and Pregnancy Allowance
13. 18–21 year old MA eligibility

Finally, because plaintiffs do not allege defendants' implementation of the following OBRA provisions denied them due process, the Court will not enjoin defendants from carrying them out at this time.

14. FS New Utility Standard
15. Summary of updates to letter file codes
16. MA new 4 month extension logic
17. Conversion bypass of 4 month extension
18. Removal of 1MS edit for child care entries
19. Treatment of earned income in MA

### B. *Irreparable Injury*

■ Plaintiffs contend that all members of the certified class will be irreparably injured if an injunction is not issued. They contend that AFDC recipients receive

grants in amounts which are 85 percent of what has been determined to be a minimum subsistence amount. Consequently, they argue that any loss of benefits poses a threat to their means of subsistence. They further contend that MA recipients will also be irreparably injured because their eligibility is based, for the most part, on the AFDC Assistance Standards. Finally, they contend Food Stamp recipients will be irreparably injured by a wrongful loss of benefits because their eligibility is based on federal poverty guidelines.

Defendants contend plaintiffs will not be irreparably injured if an injunction is not issued. They argue that plaintiffs have ignored the differences in the degree of possible harm which could befall recipients of aid under the three programs. Specifically, they contend that a denial or reduction of MA benefits will not result in the "brutal need" the Supreme Court discussed in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). They further contend FS recipients will not be irreparably injured because FS benefits would *increase* as a result of reductions in AFDC benefits.

The Court finds defendants' arguments without merit. Both the Supreme Court and Seventh Circuit Court of Appeals have held that a termination of welfare pending resolution of a controversy over eligibility constitutes irreparable harm; *Goldberg v. Kelly*, 397 U.S. at 264, 90 S.Ct. at 1018; *Banks v. Trainor*, 842 F.2d at 842. Because an improper reduction in benefits would also deprive an AFDC recipient of the very means by which he lives, the Court finds that those class members whose AFDC benefits were terminated or reduced without proper notice, will be irreparably injured if an injunction is not issued.

Inasmuch as eligibility for MA is based, to a large degree, on AFDC Assistance Standards, the Court further finds that those class members, whose MA benefits were terminated or reduced without proper notice, will be irreparably injured if an injunction is not issued.

Finally, because FS recipients are currently existing below the poverty level and, therefore, are dependent on aid for their subsistence, the Court also finds that they will be irreparably injured if an injunction is not issued.

## C. *Balancing of Harms*

Plaintiffs maintain that the irreparable injury they would suffer if an injunction is not issued far outweighs the costs defendants would incur in generating adequate notices and continuing benefit levels pending such notice. To support their contention they rely primarily on the following language from the Seventh Circuit Court of Appeals' decision in *Banks v. Trainor*:

> Defendants state that because of the preliminary injunction and modified preliminary injunction they are presently forced to pay approximately 1.6 million dollars per month in food stamp benefits in excess of the amount to which food stamp recipients in Illinois are entitled. This unfortunate situation can be speedily remedied by their compliance with the modified injunction which we conclude was properly entered. 525 F.2d at 843.

Notwithstanding the Seventh Circuit's holding in *Banks*, defendants contend the harm they will suffer if an injunction is issued outweighs the harm plaintiffs will suffer if an injunction is not issued. Specifically, defendants contend that the cost of unbudgeted benefits, the cost of compliance with the injunction, the possible loss of federal revenue and the possible delays in the implementation of other laws all favor the denial of plaintiffs' motion.

The Court recognizes that the State of Wisconsin will incur substantial costs in continuing benefits at pre-OBRA levels while complying with due process. It also recognizes that the State will incur costs in preparing new notices and programs which comply with due process. These costs can be minimized, however, by rapidly developing notices which comply with due process. Furthermore, because the Court is not persuaded that an injunction will cause the State to lose federal funding or cause it to postpone implementation of other pro-

grams, the Court also rejects these arguments.

Based on the foregoing, the Court finds the harm plaintiffs would suffer if an injunction is not issued outweighs the harm defendants will suffer by the issuance of an injunction.

### D. *Public Interest*

The Court also finds that the public interest will not be disserved by the issuance of an injunction. Compliance with due process benefits not only those whose benefits were wrongfully terminated or reduced. All citizens benefit when the Constitution is upheld.

Based on the foregoing, the Court finds that plaintiffs have met all four prerequisites required for preliminary injunctive relief with respect to OBRA changes 1, 2, 3, 4, 6, 8, 12. Accordingly, plaintiffs' motion for a preliminary injunction with respect to those sections is hereby granted. Plaintiffs' motion for a preliminary injunction enjoining all other OBRA provisions referred to in the Stumbras affidavit (*i.e.*, 5, 7, 9, 11, 13, 14–19) is hereby denied.

### IV. *Motion for Preliminary Injunction— Geraldine Buckhanon and Melissa Pflueger*

Although the Court has refused to certify a class consisting of all non-conversion plaintiffs, the question remains whether Geraldine Buckhanon and Melissa Pflueger are entitled to injunctive relief as individuals.

The Court has examined the notices sent to Geraldine Buckhanon and Melissa Pflueger and those portions of the parties' briefs and memoranda which deal with their claims. Because the arguments set forth by the parties with respect to these plaintiffs' claims were based on the assumption that they would be members of a class, the Court will require the parties to tailor their arguments to these individuals' claims before ruling on their motions. Accordingly, the Court hereby denies plaintiffs' Geraldine Buckhanon and Melissa Pflueger's motions for a preliminary injunction without prejudice and directs plaintiffs' counsel to notify the Court as soon as possible if they still wish to seek injunctive relief for these individuals. At that time, the Court will establish an accelerated briefing schedule.

### V. *Conclusion*

Based on the foregoing, the Court grants, in part, and denies, in part, plaintiffs' motion for class certification. The class certified by the Court shall consist of:

All persons in Wisconsin whose AFDC, Food Stamp, and/or Medical Assistance benefits have been or are being reduced or terminated as a result of the implementation of those provisions of the Omnibus Budget Reconciliation Act which are reflected in the foldout and accompanying notices generated by the defendants' December 12, 1981 conversion.

In addition, the Court hereby grants, in part, and denies, in part, the plaintiff class members' motion for a preliminary injunction, and orders defendants to reinstate to their original level the AFDC, MA, and FS benefits of those members of the plaintiff class whose aid was reduced or terminated as a result of any of the following OBRA provisions:

1. 150% Gross Income Test
2. $75.00 earned income deduction
3. AFDC Vehicle Policy
4. MA Vehicle Policy
6. $1,000.00 Asset Limitation
8. AFDC Child Care
12. MA Child Care

This injunction shall remain in effect until those class members whose aid was reduced or terminated as a result of these OBRA provisions are provided with adequate advance notice of the reasons for the proposed reduction or termination, including sufficient case specific information to inform these recipients of the legal and factual basis of the defendants' proposed actions.

Further, the Court denies plaintiffs' motion for a preliminary injunction insofar as it pertains to all other OBRA provisions and denies without prejudice plaintiffs Buckhanon and Pflueger's motions for a preliminary injunction.

Finally, the Court orders defendants to submit to the Court and opposing counsel proposed notices which comply with this order by January 22, 1982.

Exhibit A
(Buckhanon v. Percy, C.A. 81-C-1601, 1/14/82)

### EXPLANATION OF PROGRAM CHANGES

THIS EXPLANATION AND THE NOTICE OF DECISION LETTER MUST BE READ TOGETHER AS ONE DOCUMENT. READ BOTH CAREFULLY.

The federal Omnibus Budget Reconciliation Act of 1981 (Public Law 97-35) signed into law by President Reagan on August 13, 1981, contains changes in the Aid to Families with Dependent Children (AFDC), Food Stamp and Medical Assistance Programs. Wisconsin is required to comply with the federal changes in these programs. Chapter 93, State Laws of 1981, made these changes in Wisconsin's law. The program changes which result from the above revisions in State or Federal laws are identified in Section 1-7 of this Explanation of Program Changes.

Many changes in the AFDC and Medical Assistance program will change your grant amount or program eligibility status.

We have provided in section 9 of this Explanation of Program Changes a description of your appeal rights and how to file your appeal.

With this Explanation of Program Changes, you have also received an Individual Notice of Decision letter which identifies the reason(s) you are no longer eligible for AFDC or Medical Assistance or the reason(s) your benefits are being reduced.

If you wish to know the exact figures used in computing the change in your grant, or if you need further clarification of the reasons for the change, call your case aide at the phone number shown on your Notice of Decision letter.

Below is an example of how AFDC grant calculations have changed for persons with earned income.

| Present (12/81) | New (1/82) | |
|---|---|---|
| Gross Income | Gross Income | |
| −Minus "$30 and 1/3" disregard as an incentive to work | −Minus up to $75.......... | See Section 2 of this Explanation |
| −Minus actual work related expenses | −Minus up to $160 for child care .................... | See Section 3 |
| −Minus actual child care up to agency maximums | −Minus "$30 and 1/3" disregard............... | See Section 4 |
| +Plus unearned income | +Unearned income | |
| =Budgetable Income | =Budgetable Income | |
| | | |
| AFDC Payment Allowance | AFDC Payment Allowance | |
| −Minus Budgetable Income | −Minus Budgetable Income | |
| =AFDC Grant | =AFDC Grant | |

### SECTION 3

#### Dependent Care (e.g. Child Care)

If you were employed, you may have had all or part of the cost of care for a dependent child disregarded from your earned income.

Effective January 1, 1982, under Section 49.19(5)(a)3., Wis. Statutes, if you work full-time (30 hours or more per week), no more than $160 per month for care of each dependent child may be disregarded from your earned income. The child needing care while you work must live in your home and also receive AFDC payments. If you work less than full-time (less than 30 hours per week), no more than $12. per month for care for each dependent child may be deducted from your earned income.

> Effective January 1, 198., under Sections 49.46(1)(a)1. and 49.47(4), Wis. Statutes, and 42 CFR 435.700-.711 and 42 CFR 435.831, the AFDC limits on dependent care costs are required for Medical Assistance applicants and recipients. If your allowable dependent care costs are reduced because of the new dependent care limits, you may be ineligible for Medical Assistance benefits. If you are ineligible for Medical Assistance for this reason, your Notice of Decision will contain Reason B listed in Section 8 of this Explanation document.

> Your AFDC grant may be reduced due to the dependent care deduction limit. If a reduction occurs, your Notice of Decision will contain Reason G listed in Section 8 of this Explanation document.
>
> If you become ineligible as a result of the dependent care limit, your Notice of Decision will contain Reason A listed in Section 8 of this Explanation document.

### SECTION 4

#### "$30 and 1/3" Earned Income Disregard

In the past, if you worked we disregarded (did not count) the first $30, and 1/3 of the remainder, of your GROSS earned income (earnings before taxes and other deductions).

Effective January 1, 1982, under Section 49.19(5)(a)4., Wis. Statutes, we subtract the "$30 and 1/3" from your NET earned income (gross income minus deductions). The net earned income is the money left after subtracting work related expenses and dependent care deductions from your gross earned income. This change in calculation of the "$30 and 1/3" earned income disregard will result in a smaller amount of money being disregarded.

> If your AFDC grant is reduced because of a change in the "$30 and 1/3" disregard, your Notice of Decision will contain Reason H listed in Section 8 of this Explanation document.
>
> If you are no longer eligible for AFDC because of the change in the "$30 and 1/3" disregard, your Notice of Decision will contain Reason A listed in Section 8 of this Explanation document.

## Section 1

### Gross Income Test

Effective January 1, 1982, under Section 49.19(4)(es), Wis. Statutes, you are no longer eligible for AFDC if your family's gross monthly income (total monthly income prior to any deductions) exceeds 150% of the AFDC need standard for your size family. The AFDC need standard used in determining your AFDC eligibility is found in Section 49.19(11)(a), Wis. Statutes. When looking at your gross income, we will not count

Supplemental Security Income Program (SSI) payments, payments made under the low income Energy Assistance Program, Food Stamps and other benefits when federal law says that the benefit may not be counted as income for a welfare program.

This table shows the maximum gross monthly income limits for different family sizes according to the area of the state in which you live.

Maximum Monthly Gross Income Limit by Family Size and Area

| Family Size | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|
| Area I | $399 | 708 | 834 | 993 | 1,142 | 1,233 | 1,337 | 1,418 | 1,485 | 1,520 |
| Area II | $387 | 687 | 809 | 963 | 1,107 | 1,196 | 1,296 | 1,376 | 1,440 | 1,475 |

If your case is closed because gross monthly income exceeds the new applicable limit explained above, your Notice of Decision will contain Reason A or C as shown in Section 8 of this Explanation document.

## Section 2

### $75 Earned Income Disregard

Effective January 1, 1982, under Section 49.19(5)(a)2, Wis. Statutes, there is now a limit to the amount of your earned income which may be disregarded (not counted) as work related expenses. If you work full-time (30 hours or more per week), the earned income exemption will be $75. If you work less than full-time (less than 30 hours per week), the earned income exemption will be 18% of your gross income OR $75, whichever is less.

If your earned income disregard was more than $75 last month or more than 18% of income if you worked less than 30 hours, it will be reduced. This reduction may cause your AFDC grant to be less or you may not be eligible for AFDC.

If your AFDC grant is reduced because of the $75 limit on the earned income disregard, your Notice of Decision will contain Reason D listed in Section 8 of this Explanation document. If you are ineligible for AFDC because of this change, your Notice of Decision will contain Reason A listed in Section 8 of this Explanation document.

## Section 5

### Asset Limit

Effective January 1, 1982, under Sections 49.19(4)(bm), 49.46(1)(a)1., and 49.46(1)(e), Wis. Statutes, and 42 CFR 435.700 and 435.711, the value of assets you may have is limited to $1,000. This limit is the same for AFDC and Medical Assistance recipients who receive AFDC. The asset limit was formerly $1,500.

What we consider as an asset is the same under both the old and new law, except for motor vehicles. Section 49.19(4)(bm), Wis. Statutes, allows you to own any number of motor vehicles. Equity value is the money you would get (after paying what you owe on the vehicle) if you sold the vehicle for what it is worth in the current market. The vehicle which has the greatest equity value will be considered your "first vehicle." The equity value in the "first vehicle" in excess of $1,500 is counted toward the $1,000 asset limit. All equity in other vehicles is counted as an asset. Your case side can tell you what the equity value of your motor vehicle is.

If your case is closed because your assets exceed the $1,000 limit, your Notice of Decision will contain Reason E listed in Section 8 of this Explanation document.

## Section 6

### Aid for Pregnant Women

Effective January 1, 1982, under Section 49.19(4)(g), Wis. Statutes, pregnant women who meet other AFDC eligibility criteria may be eligible for AFDC beginning in the seventh month of pregnancy. If found eligible for AFDC, pregnant women with no other children would receive a single person grant. No AFDC benefits can be paid to meet the needs of unborn children. The statute provides for payment of an additional $60 monthly allowance to pregnant women beginning in the seventh month of pregnancy and continuing through the month of the child's birth.

If you have no children and you are married, and your spouse has been receiving AFDC, then he will no longer be eligible for AFDC because there is not a dependent child in your home. If your AFDC grant is reduced for this reason, your Notice of Decision will contain Reason F listed in Section 8 of this Explanation document.

SECTION 6 CONTINUED OTHER SIDE

## Section 6, - CONTINUED

You may be in the 7th, 8th or 9th month of pregnancy and be receiving an AFDC payment for the next size larger AFDC group than the actual size of your family. If so, your new AFDC payment will be changed to the AFDC payment for your actual family size not counting the unborn child, plus $60.

> If your AFDC grant is reduced for this reason, your Notice of Decision will contain Reason J or L listed in Section 8 of this Explanation document.

Effective January 1, 1982, if you are pregnant you may be found ineligible for AFDC, (under Section 49.19(4)(g) Wis. Statute) or Medical Assistance (under Sections 49.46(1)(a)1., or 49.47(4), Wis. Statutes) for one of the following reasons:

1. You are in the first six months of pregnancy. If you are ineligible for AFDC for this reason, your Notice of Decision will contain Reason I listed in Section 8 of this Explanation document.

2. You are married and do not meet the AFDC eligibility criteria for the Unemployed Parents Program or either you or your spouse is not incapacitated. If you are ineligible for Medical Assistance for this reason, your Notice of Decision will contain Reason M or N listed in Section 8 of this Explanation document.

3. If you are the father of an unborn child, you will no longer be eligible for Medical Assistance. Your Notice of Decision will contain Reason M listed in Section 8 of this Explanation document.

## Section 7

### Some 18-21 Year Olds Are No Longer Eligible for Medical Assistance

Effective January 1, 1982, under Section 49.47(4)(a)1. and 2., Wis. Statutes, and 42 CFR 435.308, you may no longer be eligible for Medical Assistance.

Formerly, you were eligible for Medical Assistance if your income was low enough and you were between 18 and 21 years of age. Now, even though your income is low enough, you are no longer automatically eligible for Medical Assistance simply because you are between 18-21 years of age. To maintain your Medical Assistance eligibility, you will have to meet the income and asset limitations and be one of the following:

a. Blind

b. Disabled

c. Pregnant and otherwise eligible for AFDC, but have not reached the 7th month of your pregnancy.

d. Included in an AFDC grant.

## Section 8

### DESCRIPTION OF "REASONS" CONTAINED IN YOUR NOTICE OF DECISION LETTER

This Section lists the brief "reason" statement(s) that are contained in Notice of Decision letters for a reduction in benefits or a finding of ineligibility. Refer to Sections 1-7 of this Explanation of Program Changes document for a fuller explanation of each change.

A. Income is $_____ above limit allowable for eligibility. 49.19(5)(a)* Stats, 45 CFR** 233.20(a)(3)

B. Income is $_____ above limit allowable for eligibility. 49.46(1)(a)* or 49.47(4)(c) Stats., 42 CFR 435.700 and 435.711

C. Income exceeds the gross income limit. 49.19(4)(es)*, Stats., 45 CFR 233.20(a)(3)(xiii)

D. Allowable work related expenses are less. 49.19(5)(a)2.,* Stats., 45 CFR 233.20(a)(11)

E. Assets are $_____ above limit allowable limit. 49.19(4)(bm)*; 49.46(1)(a)1., Stats.; 45 CFR 233.20(a)(3)

F. There is no eligible child (under 18) in the home. 49.19(1)(a), Stats.

G. Child care costs are less/unneeded. 49.19(5)(a)3.*, Stats.; 45 CFR 233.20(a)(11)

H. Allowable earned income disregard is less. 49.19(5)(a)4.*, Stats.; 45 CFR 233.20(a)(11)

I. Pregnancy is not in month 7, 8 or 9. 49.19(4)(g)*; 49.47(4)(a)2.*; 49.46(1)(a)1m*, Stats.

J. Pregnancy allowance has been reduced. Sec. 49.19(4)(g)*, Stats.

K. He/she is 18-21 years old. 49.47(4)*, Stats.

L. The pregnancy allowance no longer applies. Sec. 49.19(4)(g)*, Stats.

M. Is not aged, blind, disabled or under 18. 49.47(4)(a) Stats.

N. No person is determined eligible. 49.19(4)(a), 49.47(4)(a), Stats.

* Wisconsin Statutes effective January 1, 1982
** Code of Federal Regulations

844

## SECTION 8 - CONTINUED

e. A resident in an intermediate care facility, skilled nursing facility or inpatient psychiatric hospital, and under 21 years of age.

If you are no longer eligible for medical assistance because you are 18-21 years of age and are not covered by a-e. above, your Notice of Decision will contain Reason K listed in Section 8 of this Explanation document.

EXPLANATION OF PROGRAM CHANGES.

PLEASE READ THIS
SHEET CAREFULLY,
TOGETHER WITH YOUR
NOTICE OF DECISION
LETTER.

START ON OTHER SIDE.

## SECTION 9

### RIGHTS TO APPEAL

You have the right to appeal any action taken by this agency. You may appeal in writing, by phone or in person. To appeal by phone or in person, call the number or go to the office shown on your Notice of Decision letter. Oral hearing requests must be followed by a written request before a hearing will be scheduled. To submit a written request for a fair hearing, send your request to your local agency or to the State Department of Health and Social Services, Office of Administrative Hearings, c/o Division of Economic Assistance, P. O. Box 8913, Madison, WI 53708. You must do this within 45 days of January 1, 1982.

You have the right to a written notice from this agency 10 days in advance of any action we intend to take that will stop or reduce your benefits. If you request a fair hearing during those 10 days, your benefits will not be stopped or reduced at least until the fair hearing decision is made. If the hearing decision orders that your aid be reduced or stopped, you may be

required to repay any excess benefits you received while your appeal was pending. We will be glad to explain how this might apply to your case. Our staff will help you with any request for a fair hearing, or will arrange a conference with you to discuss any agency actions you question. A conference will not affect your right to a fair hearing.

If you or your representative fail to appear, without good cause, at your scheduled hearing, your appeal will be considered abandoned and will be dismissed.

At any fair hearing or conference you may represent yourself or be represented by an attorney, friend, relative or other person of your choice. We cannot pay for an attorney for you, but free legal advice may be available to you. You may call the phone number on the Notice of Decision letter for more information about this. You can also retain a private attorney at your expense. You may contact the legal referral service in your community if you do not already have an attorney.

If you have trouble understanding or speaking English, you may bring your own interpreter. We cannot pay for this, but free help may be available. You may call the phone number on the Notice of Decision letter for more information.