**UNITED STATES of America, et al.,
Plaintiffs-Appellees,**

v.

**CITY OF CHICAGO, et al.,
Defendants-Appellants.**

No. 75–2073.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 6, 1976.

Decided Feb. 20, 1976.

Richard J. Phelan, Earl L. Neal, Asst. Corp. Counsels, Richard M. Gutman, Richard J. Phelan, Philip B. Kurland, Judson H. Miner, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., Ilana Diana Rovner, Asst. U. S. Atty., Thomas A. Gottschalk, Chicago, Ill., Donald Pailen, Atty., Dept. of Justice, Hyattsville, Md., for plaintiffs-appellees.

Stephen A. Schiller and John Beal, Chicago Crime Comm., John F. McCarthy, Chicago Bar Assoc., Julian H. Levi, S. E. Chicago Comm., James R. Bryant, The Civic Federation, Chicago, Ill., for amici curiae.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and EAST, Senior District Judge.*

FAIRCHILD, Chief Judge.

This is an appeal from an order denying dissolution of a portion of a preliminary injunction. Since that portion of the preliminary injunction (prohibiting payment to the City of revenue sharing funds) has now been continued in effect by a final decree on the merits, appellees have moved for dismissal of the appeal now before us.

I

The complex and extended case involved in this appeal has evolved from a number of decisions both in the district courts and from our own court. We have already considered on four different occasions proce-

* Senior District Judge William G. East of the District of Oregon is sitting by designation.

dural[1] and substantive[2] issues involved in this litigation. We have now been asked by the appellant, City of Chicago, to review the order of the district court entered November 13, 1975[3] refusing to dissolve a preliminary injunction prohibiting the payment of revenue sharing funds to the City. This appeal was orally argued before the court January 6, 1976. On January 5, the district court issued a Memorandum Decision[4] calling for entry of a decree which, among other things, would continue in effect the injunction against payment of revenue sharing funds which the appellants sought to dissolve. Such decree was entered February 2, 1976. Plaintiffs sought dismissal of this appeal as moot. In order to put the matter in perspective, it is necessary briefly to review the procedural history of this case.

This case has resulted from the consolidation of several employment discrimination suits and a suit to enjoin the payment of funds to the City of Chicago under the State and Local Assistance Act of 1972, 31 U.S.C. § 1242(a). The suits complaining of racial discrimination in the Chicago Police Department disciplinary and assignment practices were filed initially by the *Robinson* plaintiffs on September 9, 1970. The *Camacho* plaintiffs filed suit on May 13, 1973 against the Superintendent of Police, the City, and other defendants alleging discrimination against Hispanics and blacks in Police Department hiring practices. Shortly thereafter, the United States of America filed a separate complaint against the same defendants, alleging a pattern and practice of racial and sex discrimination by the defendants with respect to employment, promotion, assignment and discipline in the Police Department. Still later, the *Burauer* plaintiffs were granted leave to intervene, alleging sex discrimination. The plaintiffs sought injunctive relief under the civil rights and equal employment opportunity statutes, 42 U.S.C. §§ 1981, 1983, 1985, 2000d *et seq.*, 2000e *et seq.*

On April 24, 1974 the motion by the various plaintiffs to consolidate these actions was granted by Judge Marshall.[5] The hearing on plaintiffs' application for preliminary injunction was concluded on July 11, 1974. The court filed an opinion and issued a preliminary injunction on November 7, 1974.[6] The injunction prohibited the defendants "from engaging in any act or practice which has the purpose or effect of discriminating against any employee of, or any applicant or potential applicant for employment with the Chicago Police Department because of such individual's race, sex, color, or national origin, . . . ." The defendants were specifically enjoined from (1) "failing, or refusing to recruit, hire, assign and promote" black and Spanish-surnamed persons and women on an unequal basis with white men; (2) "failing or refusing to eliminate qualifications" which were not job-related; and (3) using the 1971 Patrolman's Examination and the 1973 Sergeant's Examination as the source of the respective eligibility lists for appointments to the rank of Patrolman and promotion to the rank of Sergeant. The court made findings that the City's practices had a racially disproportionate impact on hiring and promotion in the Police Department. The judge also found that a *prima facie* case of discrimination was established, thereby

---

1. *United States v. City of Chicago*, No. 75–1151 (7th Cir., April 25, 1975) (granting the motion of the intervening defendants to dismiss their appeal); *United States v. City of Chicago*, No. 75–1152 (7th Cir., May 21, 1975) (granting defendants' motion to withdraw their appeal).

2. *City of Chicago v. Simon*, No. 74–2048 (denying defendants' motion to stay the Secretary's action); *United States v. City of Chicago*, No. 74–2049 (denying defendants' motion for an injunction pending appeal) (7th Cir., January 3, 1975); *United States v. City of Chicago*, 525 F.2d 695 (7th Cir., 1975) (affirming June 6, 1975, order of the district court).

3. *United States, et al. v. City of Chicago, et al.*, 405 F.Supp. 480 (N.D.Ill.1975).

4. *United States, et al. v. City of Chicago, et al.*, 411 F.Supp. 218 (N.D.Ill., January 5, 1976).

5. *United States v. City of Chicago*, 385 F.Supp. 540 (N.D.Ill.1974).

6. *United States v. City of Chicago*, 385 F.Supp. 543 (N.D.Ill.1974).

shifting the burden of persuasion to the defendants.

Shortly before the actions had been consolidated in the Northern District of Illinois, the *Robinson* plaintiffs commenced an action in the District Court for the District of Columbia against the Secretary of the Treasury and officials of the Office of Revenue Sharing (ORS). The plaintiffs argued that Section 122(a) of the State and Local Assistance Act of 1972, 31 U.S.C. § 1242(a), prohibits the defendants from providing funds for any program or activity which excludes from participation any person "on the ground[s] of race, color, national origin, or sex." The plaintiffs alleged that the Police Department had been engaged in the kind of discriminatory and exclusionary practices that would require the Secretary and the ORS defendants to withhold revenue sharing funds from the City of Chicago as provided by sections 1242(a), (b) and (c) of the Act. The plaintiffs' motions for summary judgment and preliminary injunction were at first denied by Judge Smith. The court decided that before the private plaintiffs could receive injunctive relief the Attorney General must be allowed time to seek compliance with section 1242 by means of a civil suit.[7] Such an action had been commenced by the United States through an amendment to its complaint filed in the discrimination suit, then pending in the Northern District of Illinois before Judge Marshall.

On November 26, 1974, after the preliminary injunction had been granted by Judge Marshall, the *Robinson* plaintiffs renewed their motions before Judge Smith in the District of Columbia. Based on the findings made by Judge Marshall on November 7, 1974, Judge Smith granted the motions.

He enjoined the Secretary and the ORS officials from making further revenue sharing payments to the City of Chicago until the defendants had determined that the City was in compliance with the November 7, 1974 order of Judge Marshall and the nondiscrimination requirements of the State and Local Assistance Act of 1972.

After intervening in the action in the District of Columbia and unsuccessfully seeking modifications of Judge Smith's order, the City did not appeal, but moved to transfer the revenue sharing case to the Northern District of Illinois. The motion was granted and the case was consolidated with the discrimination action before Judge Marshall. The consolidated cases proceeded to trial on the merits on March 10, 1975. Before the completion of the trial, the City again moved to modify Judge Smith's order. Judge Marshall denied modification, finding that the discriminatory practices had not been terminated and "[i]ndeed, to the extent that conditions have changed, they support continuation of the order."[8] The City did not appeal from that denial of modification of the order prohibiting payment of revenue sharing funds.

On October 10, 1975, more than three months after the completion of the trial on the merits, the City filed yet another motion to modify the revenue sharing order. The City argued that it was in compliance with Judge Marshall's injunction, and that it had begun to fulfill the terms of the interim hiring agreement.[9] Specifically the City revealed that it had appointed one hundred and seventy-five persons to the position of temporary sergeant, and two hundred persons had been placed in the Police Academy. Judge Marshall, however,

7. *United States v. City of Chicago,* 395 F.Supp. 329, 335 (N.D.Ill.1975).

8. *United States v. City of Chicago,* 395 F.Supp., *supra,* at 345.

9. This interim hiring agreement had been reached by the parties and approved by Judge Marshall on December 16, 1974. It directed that "approximately 600 patrol officer vacancies be filled in three groups of 200 on January 2, 1975, February 2, 1975 and March 2, 1975, with 100 positions in each group to be filled by blacks and Spanish surnamed males from the 1971 Patrolman's Eligibility List, 33 to be filled by females from the eligibility list based upon the 1972 Police Woman's/Matron's Examination, and 67 positions to be filled by other male persons from the 1971 Patrolman's Eligibility List." *United States v. City of Chicago,* 395 F.Supp., supra, at 336.

ruled on November 13, 1975 that "circumstances had not changed materially" since the earlier denial of the City's motion to modify the injunction. Consequently, the judge, promising a diligent effort to finish the task of preparing final written findings and conclusions, denied the City's last motion.[10] The City appealed.

II

■ 28 U.S.C. § 1292(a)(1) provides that the Courts of Appeals "shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." An appeal from denial of a purely repetitive motion to dissolve an injunction has at times been treated as an attempt to appeal from the order granting the injunction and dismissed if untimely. *Stiller v. Squeez-A-Purse Corp.*, 251 F.2d 561, 563 (6th Cir. 1958). We are satisfied that the City's motion of October 10, 1975, was sufficiently different from earlier motions,[11] so that the City had the right to appeal from the denial.

■ We now consider the consequences of the Final Decree on this appeal. The Decree, dated February 2, 1976, has made the preliminary injunction final. The City now argues that the Memorandum Decision and Final Decree were improperly entered because the district court lacked jurisdiction over the case once the present appeal from the order of November 13, 1975 was filed.[12] Legal precedent and sound judicial policy do not support this contention. An appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues involved in the case. *District 2, Marine Eng. Ben Ass'n v. Falcon Carriers, Inc.*, 374 F.Supp. 1342, 1345 (S.D. N.Y.1974). The Supreme Court in *Ex parte*

*National Enameling Co.*, 201 U.S. 156, 162, 26 S.Ct. 404, 406, 50 L.Ed. 707, 708 (1906) explained that following the appeal of an interlocutory order the case "is to proceed in the lower court as though no such appeal had been taken . . . ." *See also Marconi Wireless Co. v. United States*, 320 U.S. 1, 47, 63 S.Ct. 1393, 1414, 87 L.Ed. 1731, 1756 (1943); *Chicago Housing Ten. Org., Inc. v. Chicago Hous. Auth.*, 512 F.2d 19, 22 (7th Cir. 1975). To require the district court to halt its deliberations, after an extended trial and numerous rulings on pre and post-trial motions, would ill serve the needs of the parties in this litigation and frustrate the economy of the judicial process.

Our court has recognized that "an order granting or denying an interlocutory or preliminary injunction is merged in a decree or order granting or denying the permanent injunction, and that when both orders are appealed from, the appeal from the former will be dismissed." *Peterson v. Brotherhood of Locomotive Firemen and Enginemen*, 268 F.2d 567, 568 (7th Cir. 1959). *See also Securities and Exchange Commission v. Okin*, 137 F.2d 862, 863 (2d Cir. 1943); *Moore Dry Dock v. Pillsbury*, 98 F.2d 115 (9th Cir. 1938). The Supreme Court has established the policy of treating the preliminary and permanent injunctions as merged both when the injunctions are denied, *Shaffer v. Carter*, 252 U.S. 37, 44, 40 S.Ct. 221, 222, 64 L.Ed. 445, 453 (1920) and *Pacific Tel. Co. v. Kuykendall*, 265 U.S. 196, 205, 44 S.Ct. 553, 556, 68 L.Ed. 975, 981 (1924), and when they are granted, *Sterling v. Constantin*, 287 U.S. 378, 386, 53 S.Ct. 190, 191, 77 L.Ed. 375, 379 (1932). The filing of the appeal from the permanent injunction then requires the dismissal of the appeal from the preliminary injunction. *Smith v. Ill. Bell*, 270 U.S. 587, 588, 46 S.Ct. 408, 70 L.Ed. 747, 748 (1926).

10. *United States, et al. v. City of Chicago, et al.*, 405 F.Supp. 480 (N.D.Ill.1975).

11. The City has moved to modify the preliminary injunction on the grounds that it has hired two hundred policemen in compliance with the interim hiring agreement, *supra*, note 9, and the terms of the injunction. This motion raises a new substantive issue not argued, for example, in the City's January 20, 1975 motion to modify the preliminary injunction.

12. The cases cited by the City do not support this proposition. Neither *G & M, Inc. v. Newbern*, 488 F.2d 742 (9th Cir. 1973) or *Grand Opera Co. v. Twentieth Century Fox Film Corp.*, 235 F.2d 303 (7th Cir. 1956) deal with the question of the district court's jurisdiction of cases in which an *interlocutory* order is being appealed.

This approach is surely reasonable because of the difference in the issues on an appeal from a preliminary injunction (or denial of dissolution thereof, as in this case), and an appeal from a decision on the merits. One of the considerations in entry of a preliminary injunction is the probability of the plaintiffs' success on the merits. Yet on final decision, the district court has decided the merits. To attempt to review the district court's advance assessment of probabilities of plaintiffs' success when the district court has now found in favor of plaintiffs on the merits seems a futile exercise. Good sense dictates that review of the decision on the merits would be more meaningful.

As far as we are advised, the City has not yet filed an appeal from the final decree, although it will be able on such appeal to obtain at least as broad a review of the merits of the decision to withhold revenue sharing funds as it could obtain on appeal from the denial of the motion to dissolve the preliminary injunction. We retain the present appeal in our docket for the present, but will dismiss it if and when an appeal from the final decision is filed by the City.'