Geraldine **BUCKHANON** and Rosetta Bailey, et al., Plaintiffs-Appellees and Cross-Appellants,

v.

Donald **PERCY**, Bernard J. Stumbras and Kenneth Rentmeester, et al., Defendants-Appellants and Cross-Appellees.

Nos. 82–2057, 82–2142.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 9, 1983.

Decided May 20, 1983.

As Amended May 31 and June 15, 1983.

Rehearing and Rehearing En Banc Denied Sept. 9, 1983.

F. Thomas Creeron, III, Wis. Dept. of Justice, Madison, Wis., for defendants-appellants/cross-appellees.

Mary Fisher, Bernet, Legal Action of Wis. Inc., Milwaukee, Wis., for plaintiffs-appellees/cross-appellants.

Before CUDAHY and POSNER, Circuit Judges, and HOLDER, District Judge.*

CUDAHY, Circuit Judge.

The plaintiffs-appellees in this case represent a class of recipients of benefits administered by the state of Wisconsin under the federal Aid to Families with Dependent Children ("AFDC") and Medical Assistance ("MA") programs, whose benefits were reduced or terminated as a result of certain changes mandated by the Omnibus Budget Reconciliation Act of 1981 ("OBRA"). They sued the defendants-appellants, who are officials of the Wisconsin Department of Health and Social Services ("Department"), charging that the notices of reduction or termination which they had received were legally inadequate and seeking to enjoin the Department from putting the changes into effect until adequate notice had been given. After the district court had granted a preliminary injunction on January 14, 1982, the Department moved for a clarification of the order on grounds that payment of January benefits was barred by the Eleventh Amendment. In a June 1, 1982, order, the district court held that payment of January AFDC benefits was not barred by the Eleventh Amendment, but that MA benefits could only be received for services incurred after the court's January 14, 1982, order. The defendants have appealed the June decision to us, as well as the preliminary injunction issued in January. The plaintiffs have cross-appealed the court's decision that medical benefits should be paid only from January 14, 1982. We dismiss the appeal of the January order granting an injunction for want of jurisdiction and affirm in part and modify in part the district

---

* The Honorable Cale J. Holder, District Judge for the Southern District of Indiana, is sitting   by designation.

court's judgment in light of the Eleventh Amendment.

## I

The State of Wisconsin participates in the Aid to Families with Dependent Children and Medical Assistance programs described in Titles IV and XIX of the Social Security Act, 42 U.S.C. §§ 601 *et seq.* and §§ 1396 *et seq.* (1976). Under these statutory schemes, the federal government partially reimburses participating states for financial and medical assistance benefits provided to eligible families and for the costs of administering the program. As a condition of receiving federal funds, states must operate programs which conform with the requirements set forth in the Social Security Act and implementing regulations.

On August 13, 1981, Congress enacted the Omnibus Budget Reconciliation Act, Pub.L. No. 97–35, which mandated a series of changes affecting the calculation of resources, eligibility and benefits for the various aid programs. In order to implement the mandated changes in the income and asset requirements, the Wisconsin legislature passed a series of changes in Wisconsin law, effective December 5, 1981. To put the new law into effect, the Department then reprogrammed, or "converted," the computer system by which individual grants were calculated. The conversion processing resulted in the reduction or termination of aid for many individuals. Since MA eligibility may be derived from AFDC eligibility, pursuant to Wis.Stat. section 49.46(1)(a) (1979–80),[1] the process also resulted in the termination of medical benefits for those individuals who were no longer entitled to AFDC after the changes.

Every AFDC or MA recipient whose benefits were reduced or terminated as a result of the OBRA changes received a notice informing him or her of that fact. These notices, generated by computer, contained a one-sentence explanation of the reason for the termination or reduction; they were accompanied by a pre-printed foldout entitled "Explanation of Program Changes." The foldout described the various OBRA and state law changes affecting eligibility and benefits. Only if the recipient read the individual notice in conjunction with the relevant section of the foldout was it possible to conclude why his or her benefits had been changed.[2]

On December 21, 1981, the plaintiffs filed a complaint seeking declaratory and injunctive relief, on the grounds that these notices were inadequate; at the same time they filed a motion to certify a class under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. The suit sought to enjoin the state from reducing or terminating any benefits without providing recipients with an adequate written notice containing the specific reasons and computations which resulted in the change. A hearing on the motion for a preliminary injunction was held on December 30, 1981 and January 8, 1982. In an order issued January 14, 1982, *Buckhanon v. Percy,* 533 F.Supp. 822 (E.D. Wis.1982), the district court certified as a class all persons in Wisconsin whose benefits had been reduced or terminated as a result of the implementation of the OBRA changes reflected in the foldout and accompanying notices generated by the December 12, 1981 conversion. As to the members of that class, the court granted the motion for a preliminary injunction, ordering the defendants to "reinstate to their original level" the benefits of those members of the plaintiff class whose aid was reduced or terminated as a result of seven specific OBRA provisions, in relation to which the judge found the notices to be inadequate. 533 F.Supp. at 840. He also ordered the Department to submit proposed revised notices to the court by January 22, 1982. *Id.* at 841.

Rather than appealing this decision, the defendants filed revised notices on January

---

1. MA eligibility may also be based upon meeting certain financial and personal characteristic requirements under Wis.Stat. § 49.47(4) (1979–80).

2. A copy of the foldout and detailed descriptions of the notices sent in relation to the various program cuts are set out in *Buckhanon v. Percy,* 533 F.Supp. 822 (E.D.Wis.1982).

18, 1982, which contained case-specific information and computations; and these notices were mailed to most aid recipients before the date when February benefits were to be paid.[3] After a hearing held on January 20, 1982, the court approved the revised notices. During that hearing the defendants raised for the first time, in the form of an oral motion to clarify the preliminary injunction, the question whether payment of January benefits was barred by the Eleventh Amendment. In an order of June 1, 1982, the district court addressed this issue and concluded that its order reinstating AFDC benefits for the month of January at December levels did not violate the Eleventh Amendment but that MA benefits could only be paid for services received after the date of the court order, January 14, 1982. On July 1, 1982 the defendants filed a notice of appeal from the orders entered on June 1, 1982 in response to the motion to clarify, specifying that they were appealing (1) the order to pay AFDC benefits for the month of January 1982 at December 1981 levels and (2) the order to pay for medical services received after January 14, 1982. The plaintiffs cross-appealed that portion of the court's June 1 order which denied MA coverage from January 1, 1982 through January 14, 1982. They also cross-appealed the dismissal of two organizational plaintiffs for lack of standing, but that appeal has been voluntarily withdrawn. On October 28, 1982, this court granted a stay pending appeal of the district court's injunction.

## II

■ The initial question for our consideration is one of jurisdiction, that is, whether the June 1, 1982, order is appealable to us. Our jurisdiction, if it exists, must rest on 28 U.S.C. Section 1292(a)(1): "The courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunc-

tions. . . ." 28 U.S.C. § 1292(a)(1) (1976). The June order under consideration here was issued in response to a motion to *clarify* the January injunction. The statute, on the other hand, allows interlocutory appeals as an exception to the finality rule in cases where an order *modifies* an injunction. But, however a particular motion or order is styled, this provision on appealability is *not* intended to allow litigants to circumvent by the filing of repetitive motions the time limitation for taking appeals. *See Squillacote v. Local 248, Meat & Allied Food Workers,* 534 F.2d 735, 750 (7th Cir.1976); *Merrell-National Laboratories v. Zenith Laboratories, Inc.,* 579 F.2d 786, 790–91 (3d Cir.1978); *see also* 9 J. Moore, *Moore's Federal Practice* ¶ 110.20[2] (2d ed. 1982).

In deciding whether the order before us is appealable under Section 1292(a)(1), our cases direct us to consider the substance rather than the form of the motion: "If we were satisfied that modification, or refusal of requested modification, rather than construction were the real substance of the matter, we could recognize such substance, disregard form, and exercise jurisdiction." *S.E.C. v. Investment Corp. of America,* 369 F.2d 383, 384 (7th Cir.1966). Thus, even if the motion in the case at hand were captioned a motion to "modify" but was in fact an attempt to relitigate the original injunction, we would not have jurisdiction over it. If, on the other hand, the motion here was what one court has called "functionally the equivalent" of a motion to modify, we may assert jurisdiction. *Merrell-National Labs,* 579 F.2d at 791.

The precise question before us, therefore, is whether the substance of the June 1, 1982, order was modification (or denial of modification) of the order of January 14, 1982. The plaintiffs argue that it was clear from the January order that the department would have to pay January benefits, and that the June order merely clarified this fact. In support of their position, they point to the language the district judge used in January:

---

**3.** A number of recipients did not receive the new notice before February and a motion to modify the preliminary injunction was later filed by the Department with respect to whether this timing entitled them to February benefits, but that motion is not before us here.

the Court ... orders defendants to reinstate to their original level the AFDC, MA, and FS [Food Stamp] benefits ....

The Court recognizes that the State of Wisconsin will incur substantial costs in continuing benefits at pre-OBRA levels while complying with due process. It also recognizes that the State will incur costs in preparing new notices and programs which comply with due process. These costs can be minimized, however, by rapidly developing notices which comply with due process.

533 F.Supp. at 840, 839. Plaintiffs also point to various statements in affidavits filed by Bernard J. Stumbras, one of the defendant officials, which indicate that the Department contemplated that January checks would have to be issued if the court entered an injunction on the question of notice. The Department, on the other hand, asserts that these statements were made before the date when checks are ordinarily issued in Wisconsin, January 5, and were predicated upon the assumption that an opinion would be rendered by the court before that date, thus making the payment of January benefits prospective, rather than retrospective.

█ This is a very close case. Judge Warren does seem originally to have contemplated payment of January benefits, yet he treated the Eleventh Amendment question, when raised at the January 20, 1982 hearing, as a novel one. Our previous cases suggest that in deciding whether a motion is in substance one to clarify or to modify an injunction we should consider whether it raises new substantive issues or material which has not been argued or presented rather than merely repetitive arguments stemming from a motive to relitigate issues which have been decided. *United States v. City of Chicago,* 534 F.2d 708, 711 (7th Cir.1976); *Squillacote,* 534 F.2d at 750; *see also Merrell-National Labs,* 579 F.2d at 791. In the case at hand, the question of Eleventh Amendment immunity was an important issue which had not been litigated in January; and it is one which is analytically separate from the one before the court at that time—the adequacy of the notices giv-

en aid recipients. Even were the notices inadequate and the state thus "liable," recovery of retroactive payments might still be prohibited by Supreme Court decisions interpreting the Eleventh Amendment. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Put another way, although it considered the question of liability, the court never considered whether a district court had the authority, in an opinion issued on January 14, to order as a remedy payment of January benefits. Because this presents an important and substantially different question from that decided in the order of January 14, 1982, we therefore hold that the order of June 1, 1982, is appealable under 28 U.S.C. Section 1292(a)(1) and that we therefore have jurisdiction with respect to it.

Having decided that we have jurisdiction to review the June order, we must still decide what is the scope of that review. Defendants argue that our jurisdiction is not limited to the Eleventh Amendment question but rather extends, once jurisdiction is asserted, to all the provisions of the injunction issued in January as well. They insist that it was only when the June 1, 1982, order was issued that the Department became cognizant of the full financial magnitude of the preliminary injunction, and they draw our attention to the case of *Fern v. Thorp Public School,* 532 F.2d 1120 (7th Cir.1976), as support for the proposition that an appeal from an order modifying or clarifying a preliminary injunction calls into question the initial reasons for issuance of that injunction, since those reasons are a necessary predicate to the order appealed from.

We note that in the *Fern* case this court, while asserting jurisdiction over the denial of a motion to vacate a preliminary injunction which had not itself been appealed, specifically eschewed the conclusion that "any rule of general application" was to be derived from its action. 532 F.2d at 1130. We have refused to apply *Fern* in subsequent cases and have espoused an intention to apply the rule foreclosing appeal on a pragmatic basis. *Squillacote,* 534 F.2d at

750. Moreover, commentators have regarded *Fern* as a somewhat exceptional case. In discussing it, Wright and Miller noted:

> The [*Fern*] court appears to have been influenced by the view that the district court had tacitly suggested to the defendants that they seek reconsideration. If the parties have indeed been led to believe that the propriety of the injunction is open to full reconsideration in the trial court, the failure to appeal from the initial order is excusable, and the scope of the appeal may properly extend to the initial order. In addition, even though there has been no change in circumstances, it would seem appropriate to treat it as an abuse of discretion to refuse to vacate an order that was very clearly wrong when issued.

16 C. Wright, A. Miller, E. Cooper, and E. Gressman, *Federal Practice and Procedure* § 3924 (1977 & Supp.1982). Indeed, the *Fern* decision appears to have been linked to a situation in which two factors coincided: 1) the failure to appeal was excusable, and 2) the court perceived a substantial abuse of discretion in the granting of the injunction in the first instance. Here, by contrast, Judge Warren gave no indication that his findings on the adequacy of the challenged notices were open to reconsideration.

Moreover, the law in this circuit on the contents of the notice required in such circumstances is both well settled and rather thoroughly elaborated. *See Dilda v. Quern,* 612 F.2d 1055 (7th Cir.), *cert. denied,* 447 U.S. 935, 100 S.Ct. 3039, 65 L.Ed.2d 1130 (1980); *Banks v. Trainor,* 525 F.2d 837 (7th Cir.1975), *cert. denied,* 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976); *Vargas v. Trainor,* 508 F.2d 485 (7th Cir.1974), *cert. denied,* 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). Judge Warren painstakingly applied the relevant Seventh Circuit standard to each notice about each program cut and made specific findings as to each. In "look[ing] through the door to see if we should open it," *Fern,* 532 F.2d at 1129 n. 6, we see no reason to reexamine Judge Warren's conclusions. The Department had thirty days in which to appeal in January of 1982. Fed.R.App. P. 4. Rather than take advantage of this opportunity, the Department brought the notices being used into conformity with Judge Warren's order in the space of one week. Its only reason for bringing up the notice question once again is a desire to escape the consequences of paying the January benefit by obtaining a belated holding on appeal that the original notices were adequate. In short, this is precisely the type of judgment protected by finality.

■ Moreover, the notice issue presents a question separable from the Eleventh Amendment issue raised by the June order and present before us here. There is no reason to think that Judge Warren would have evaluated the adequacy of the notices any differently had he known that the payment of January benefits might be prohibited by the Eleventh Amendment. Thus our analysis of this issue is entirely consistent with the rationale we have articulated for the exception to the finality rule in relation to the order of June 1, 1982. As we have said, that order raised a new and different issue from the one litigated in January and can be appealed on that basis. The January order to bring the notices given by the Department into conformity with the governing legal standard, however, was not appealed during the 30-day period required by Rule 4(a) of the Federal Rules of Appellate Procedure; since compliance with that rule is jurisdictional, *Browder v. Director of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978), the Department may not appeal the preliminary injunction granted in January to us at this time.[4]

---

4. We also note that the Department did not specify, as it must pursuant to Fed.R.App. P. 3(c), the initial injunction about notice as a grounds for its appeal to us. In the Notice of Appeal filed on July 1, 1982, the Department stated that it was appealing the "orders entered in this action on June 1, 1982, issued in response to defendant's oral motion to clarify a preliminary injunction which orders: 1.) require defendants to pay eligible plaintiffs AFDC benefits for January of 1982 at December 1981 benefits; and 2.) defendants to pay for medical

### III

Having concluded that our jurisdiction is limited to the Eleventh Amendment issue, we turn now to consider whether the district court exceeded its remedial authority by ordering the Department in a January 14 order to pay January benefits.[5] The Department argues that payment of these benefits is barred by *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), in which the Supreme Court held that the Eleventh Amendment prohibited the award of retroactive relief against a state. The plaintiffs, on the other hand, argue that benefits paid monthly, for the expenses of that month, cannot be said to be retroactive if paid pursuant to an injunction issued by the court, as this one was, during the course of that same month. Following two district court cases which plaintiffs cite, in one of which October benefits were ordered reinstated in an order issued on October 29th, *Porter v. Schweiker,* 527 F.Supp. 150, 152 (D.Minn.1981), and in another of which July benefits were paid out pursuant to an order of July 25th, *Turner v. Walsh,* 435 F.Supp. 707, 715 n. 9 (W.D.Mo. 1977), *aff'd per curiam,* 574 F.2d 456 (8th Cir.1978), the district court here concluded that January benefits were merely a continuation of benefits rather than a retroactive grant.

We think the Eleventh Amendment issue here is somewhat more complex. What we are required to decide, in effect, is the dividing line between past and future for purposes of Eleventh Amendment immunity. To do so requires tracing the development of this law from *Edelman v. Jordan.* In *Edelman,* the Illinois state defendants were found to have violated federal regulations as to the timely processing of applications for public aid, and the district court ordered that the benefits wrongfully withheld be paid. The Supreme Court, in reversing, held that such an award ran afoul of the Eleventh Amendment's prohibition of "payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation . . . measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." 415 U.S. at 668, 94 S.Ct. at 1358. Remedial orders which have fiscal consequences for the state treasury are permissible, however, so long as those costs are ancillary to compliance with prospective decrees. *Id.; see also Milliken v. Bradley,* 433 U.S. 267, 289, 97 S.Ct. 2749, 2761, 53 L.Ed.2d 745 (1977).

The permissibility of the remedial order in the case at hand thus turns upon whether it is "retroactive" or "prospective." In deciding where that dividing line falls, we have substantial guidance from the *Edelman* case itself and from subsequent Supreme Court interpretation of it. In *Edelman,* the Court spoke of "a time when petitioner was under no court-imposed obligation to conform to a different standard," 415 U.S. at 668, 94 S.Ct. at 1358; the Court later emphasized that the date for determining whether a monetary award is retroactive or prospective is that upon which the district court determined that the state's conduct was wrongful. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 451, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614 (1976); *see also* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4232 (1978 & Supp.1982). That date in the case before us is January 14, 1982.

The only case in which this court has considered the retroactivity issue in the context of an award of public assistance benefits is *Vargas v. Trainor,* 508 F.2d 485 (7th Cir.1974), and the court's discussion of retroactivity there is dictum since the state was found to have waived the Eleventh Amendment arguments. *Vargas* was a class action which successfully challenged

---

services (medical assistance) received by eligible plaintiffs after January 14, 1982."

**5.** This issue might have been avoided had plaintiffs sought and Judge Warren granted a temporary restraining order pending his consideration of the issues presented by the complaint filed December 21, 1981.

the reduction or termination by the Illinois Department of Public Aid of benefits to aged, blind and disabled recipients without adequate notice; the district court order of October 22 directed that October deficiencies be paid. A unanimous panel of this court found the award to violate the Eleventh Amendment, emphasizing that "the entry of a court order or judgment requiring that payments be made divides the past from the prospective for Eleventh Amendment purposes." 508 F.2d at 491. In so concluding, the panel specifically rejected the argument that the event dividing the retroactive from the prospective was the beginning of the benefit payment period during which the injunctive order was entered.[6]  *Id.*  Although the court went on to imply that payment of *any* October deficiencies would be barred, the opinion does not examine that implication; and Judge Tone apparently never considered the possibility of pro rata payments for the portion of the month after entry of the court order, most likely because the case was decided on grounds of waiver and the entire month's benefits thus were paid.

The obvious implication of *Vargas* for the case before us seems to be that payment of benefits of whatever kind for the period prior to January 14, 1982, is barred as retroactive, while payment for the period beginning January 14, 1982—the date upon which the State of Wisconsin came under a court-imposed obligation to provide more adequate notice before reducing or terminating benefits-is prospective. Both parties here, however, and the district court as well, seem to have regarded Wisconsin statutes and administrative regulations to be conclusive on this question, either allowing payment for the whole month or not at all. We are not convinced that the state's administrative procedure for delivering benefit checks is at all determinative of whether the relief in question is retroactive or prospective. Although Wisconsin usually issues checks on the 5th of each month, there is no contention that the Department lacks authority to do so on the 14th. Clearly it may do so in numerous circumstances—an initial grant, a change of circumstances, or if payment is made in installments. *See* Wis.Stat. § 49.19(3)(b) (1979–1980) and Wis. Admin.Code § PW–PA 20.11(3) (1980). Although in some of these situations—an initial determination of eligibility, for example—the payment would be for the entire calendar month, Wis.Admin.Code § PW–PA 20.11(4), when such payment is made in compliance with a federal court order, the Eleventh Amendment prohibits the award of accrued benefits for the period prior to entry of the court's order.

Other circuits which have considered this question at some length, although in slightly different contexts, have reached conclusions similar to ours. The First Circuit concluded that there was no Eleventh Amendment impediment to an order enjoining the State of Massachusetts to resume payment of AFDC payments pending an appeal and directed in an order of July 13, 1981 that the second semi-monthly checks for July be issued. *Coalition for Basic Human Needs v. King,* 654 F.2d 838, 842–43 (1st Cir.1981). Moreover, the Fourth Circuit, in a case holding that the state of Maryland, by failing to comply with adequate notice requirements, had wrongfully reduced Medicaid benefits, concluded that retrospective relief requiring the state to pay for past medical services would be barred but that the court could order prospective relief requiring the state to provide benefits under prereduction standards until such time as the state effected a legally effective reduction of benefits by mailing adequate notice. *Kimble v. Solomon,* 599 F.2d 599 (4th Cir.1979), *cert. denied,* 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1980). Thus, the court required the state to pay for medical services received by the plaintiffs after the date of the district court decree until at least ten days after adequate notice had been provided to aid recipients. *Id.* at 604–05.

■ We conclude, therefore, that the district court's order in this case must be modified in part. The Eleventh Amend-

---

6. This aspect of *Vargas* was not brought to our attention by either counsel in the instant case.

ment prohibits payment of AFDC payments for the period from January 1, 1982 to January 14, 1982. Hence, that portion of the June 1, 1982, order directing payment for that period is reversed. That portion of the order which directs payment of benefits for the period from the entry of the court's January 14 order is affirmed. Since, as both parties argue to us, MA benefits are derivative from eligibility for AFDC, pursuant to Wis.Stat. § 49.46(1)(a) (1979–1980), the order directing payment to the plaintiff class of MA benefits from January 14, 1981 is also affirmed.[7] Accordingly, this court's order of October 28, 1982, granting a stay pending appeal is hereby vacated, and the defendants are enjoined to pay AFDC and MA benefits to the plaintiff class for the period between January 14 and January 31, 1982.[8]

---

**7.** No facts or arguments have been presented to us about members of the plaintiff class whose medical benefits are not wholly derivative from eligibility for AFDC; hence we shall not speculate about benefits that might not be derivative.

**8.** We do not understand there to be any issue on appeal regarding payment of February benefits; that portion of the October 28, 1982, order granting a stay in relation to them is therefore vacated.