Reuben PALMER, et al., Subclass
A Plaintiffs,

and

Edward Negron, et al., Subclass
B Plaintiffs,

v.

CITY OF CHICAGO, et al., Defendants.

No. 82 C 2349.

United States District Court,
N.D. Illinois, E.D.

Nov. 18, 1983.

See also D.C., 562 F.Supp. 1067.

Michael Deutsch, Jeffrey Haas, Dennis Cunningham, and G. Flint Taylor, Chicago, Ill., for plaintiffs.

Robert Fioretti, Chicago Corp. Counsel, Henry A. Hauser, Cook Co., Asst. State's Atty., Jeremiah Marsh and Wm. Carlisle Herbert, Hopkins & Sutter, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In the latest chapter of this "Chicago Street Files" case, plaintiffs move under 42 U.S.C. § 1988 ("Section 1988") for entry of an interim award of attorneys' fees and expenses against defendants.[1] Because (1) plaintiffs qualify as "prevailing" under Section 1988 regardless of the outcome of the pending appeal[2] and (2) an interim fee award is appropriate in light of principles recently announced in Hensley v. Eckerhart, — U.S. —, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), this Court awards interim attorneys' fees for plaintiffs' counsel's already-successful efforts that by definition cannot be negated on appeal.

### Jurisdiction

County Defendants challenge this Court's jurisdiction to consider the fees is-

1. Defendants comprise:
   1. "City Defendants": City of Chicago, former Superintendent of Police Richard Brzeczek and Detective Division Area 2 Commander Milton Deas, and
   2. "County Defendants": Cook County State's Attorney Richard M. Daley and various of his deputies and assistants: Chief Deputy William Kunkle, former Assistant in charge of the Felony Review Division Lawrence Hyman, and Assistants Daniel Locallo and James Varga.

2. This Court's preliminary injunction opinion and order, 562 F.Supp. 1067 (N.D.Ill.1983) (the "Opinion") is now on appeal to our Court of Appeals in Nos. 83–1980 and 83–1981.

sue. That argument is not even specious—certainly not in this Circuit, and likely not in any federal court anywhere. Even in the situation in which a district court has rendered a *final* judgment—the classic situation in which an appeal from that judgment is viewed as ousting the district court of jurisdiction to do anything further—the specific teaching of our Court of Appeals is exactly to the contrary as to attorneys' fees awards in civil rights cases. That subject was discussed at length by the Court "in the exercise of our supervisory powers" (623 F.2d at 29) in *Terket v. Lund,* 623 F.2d 29, 33–34 (7th Cir.1980). After an extended analysis of the policy considerations involved, the Court concluded (*id.* at 34):

> In sum, we believe the rule in *Wright* [*v. Jackson,* 522 F.2d 955 (4th Cir.1975) ] is more likely to cause delay and wasted effort than prevent it. Therefore, district courts in this circuit should proceed with attorneys' fees motions, even after an appeal is filed, as expeditiously as possible. Any party dissatisfied with the court's ruling may then file an appeal and apply to this court for consolidation with the pending appeal of the merits.

Since that time the *Terket* rule, allowing (indeed directing) the award of attorneys' fees after an appeal has been taken, has been approved implicitly by the Supreme Court. *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 452–53 n. 14, 454, 102 S.Ct. 1162, 1166–67 n. 14, 1168, 71 L.Ed.2d 325 (1982). *White* was relied on for precisely that proposition by the Court of Appeals for the Ninth Circuit only last month in *Masalosalo v. Stonewall Insurance Co.,* 718 F.2d 955 (9th Cir.1983), specifically rejecting *Wright* and electing to follow *Terket* and the Eighth Circuit's like ruling in *Obin v.*

*District No. 9 of the IAM,* 651 F.2d 574 (8th Cir.1981).

This Court would—in accordance with the *Terket directive* from our Court of Appeals—thus have jurisdiction to consider and rule on plaintiffs' fees motion even had it rendered a *final* judgment from which an appeal was taken. It perforce has such jurisdiction a fortiori where the appeal is only interlocutory, a situation in which the concept of ouster of the district court's further jurisdiction is far more limited. It is really untenable for County Defendants to argue from older Seventh Circuit law, decided in a wholly different context, that this Court lacks the power our Court of Appeals has squarely and expressly confirmed.[3]

### "Prevailing Party" Status

■ Section 1988 permits courts to award attorneys' fees to "the prevailing party" in federal civil rights actions. "Prevailing" is defined broadly, and *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980) confirms (in accordance with the Senate Report in enacting Section 1988) a plaintiff can prevail "without formally obtaining relief." Relief need not be substantial but may even provide only a "moral vindication" of the correctness of plaintiff's position. *Knighton v. Watkins,* 616 F.2d 795, 799 (5th Cir. 1980). When the relief obtained is not formal, "the plaintiffs' lawsuit must be causally linked to the achievement of the relief obtained" and "the defendant must not have acted wholly gratuitously, *i.e.,* the plaintiffs' claims, if pressed, cannot have been frivolous, unreasonable, or groundless." *Harrington v. DeVito,* 656 F.2d 264, 266–67 (7th Cir.1981).

Plaintiffs are comfortably within the courts' expansive definition of "prevailing

---

**3.** Even on their own terms County Defendants would be dead wrong. They purport to rely on *United States v. City of Chicago,* 534 F.2d 708, 711 (7th Cir.1976), which holds:

> An appeal from an interlocutory order does not divest the trial court of jurisdiction to continue deciding other issues involved in the case.

This order does not award fees for efforts that resulted only in the preliminary injunction, nor does it presuppose the preliminary injunction will be upheld on appeal. Accordingly this Court would in any case have jurisdiction over plaintiffs' motion as an "other issue" under *City of Chicago.*

party" regardless of the outcome of any future proceedings (including the pending appeal), for they have in fact obtained very substantial informal relief. Opinion's Findings of Fact ("Findings") 17–20, 562 F.Supp. at 1072–75, establish this action has caused major and *permanent* changes in defendants' practices of retention, and disclosure to criminal defendants, of potentially exculpatory evidence. Nothing in the pending appeal questions the accuracy of Findings 17–20. On the contrary, on appeal both sets of defendants assert their own implementation of changes (triggered by this lawsuit) as the very predicate for arguing the Opinion should not have gone beyond their "voluntary" actions. Thus the uncontroverted Findings confirm the concept plaintiffs have indeed "prevailed" by obtaining relief informally.[4]

### Propriety of Interim Fees

Inquiry does not however end with the threshold determination of "prevailing party" status. *Hensley* teaches (103 S.Ct. at 1940) fee awards may be adjusted upward or downward in light of other factors, especially "the important factor of the 'results obtained,'" which is "particularly crucial

where a plaintiff is deemed 'prevailing' even though he has succeeded on only some of his claims for relief." It goes on (*id.* at 1941) to invite District Courts to "attempt to identify specific hours that should be eliminated" to conform the fee award to plaintiffs' degree of success. Thus *Hensley* requires plaintiffs to be compensated for successful but not futile efforts.

Plaintiffs invoke *Hensley*'s fee determination principles to obtain current payment of the amount below which their fee award will not fall even under the worst possible scenario. Because plaintiffs will receive at least that amount in the end, they ask it be awarded now. Their position is unassailable. Plaintiffs are "prevailing" and have engaged in successful efforts for which they will inevitably be compensated. Their attorneys have spent hundreds of hours on the case without pay, and it may be years before a final evaluation of their success in every phase of the case can be made. Moreover *Hanrahan v. Hampton*, 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam) expressly authorizes fee awards *pendente lite*.[5]

---

**4.** City Defendants say plaintiffs no longer will qualify as "prevailing" if the preliminary injunction is overturned on appeal, citing *Doe v. Busbee*, 684 F.2d 1375 (11th Cir.1982). In *Doe* the District Court had found plaintiffs prevailed even though the injunction they obtained was vacated as a result of newly issued Supreme Court opinions. On appeal that finding of prevailing party status was reversed, 684 F.2d at 1382 (footnote omitted):

Plaintiffs argue that the abortions received under the injunctions issued by the district court are evidence that they were successful in achieving the primary relief sought by bringing the litigation. However, as we have indicated above, these benefits flowed from orders of the district court that were entered under a mistake of law.... Under these circumstances, plaintiffs may not properly be considered to have vindicated a civil right as contemplated by Congress in § 1988, since in fact they had no right to the relief sought and obtained. We therefore conclude that they are not prevailing parties.

*Doe* is inapposite for two reasons:

1. In *Doe* plaintiffs sought "prevailing party" status because of relief obtained by the injunction. Plaintiffs here are entitled to

"prevailing party" status because of relief obtained independently of the injunction.

2. In *Doe* plaintiffs' relief was based on a "mistake of law." Here the right of criminal defendants to full discovery pursuant to *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963) is uncontested. Plaintiffs' success, as asserted in the current motion, is based on that right and is unaffected by the procedural and jurisdictional arguments defendants advance on appeal.

**5.** *Hanrahan* (*id.*) cited the House Committee Report's approval of the Court's earlier statements in *Bradley v. Richmond School Board*, 416 U.S. 696, 723 n. 28, 94 S.Ct. 2006, 2022 n. 28, 40 L.Ed.2d 476 (1974):

[T]he entry of any order that determines substantial rights of the parties may be an appropriate occasion upon which to consider the propriety of an award of counsel fees....

That of course requires plaintiffs to prevail "on the merits" (*Hanrahan*, 446 U.S. at 757, 100 S.Ct. at 1989) rather than on some procedural aspect of the case. Here the informal relief obtained is "on the merits" because it sharply enhanced retention and disclosure to criminal defendants of exculpatory materials, as requested in the Complaint.

## Amount of the Fee Award

Even on a worst-case basis, a substantial amount of plaintiffs' attorneys' hours to date have supported successful efforts for which *Hensley* entitles them to compensation. All their time spent through October 29, 1982 led up to and triggered the informal relief described in Findings 17–20. City Defendants themselves acknowledge in their appeal (Br. 13–14, citations to record omitted):

> After [then Police Superintendent] Brzeczek's testimony [on October 29, 1982], the Court adjourned the hearing to allow the parties to attempt to resolve the litigation. The CPD immediately issued a telex to its areas consistent with the Superintendent's position. The CPD also prepared a draft detective division notice incorporating new record-keeping practices implementing the Superintendent's declared policy.

That Chicago Police Department telex and draft detective division notice are part and parcel of the informal relief that forms the basis for this order.

Thereafter plaintiffs rejected defendants' measures as inadequate to solve the problems they perceived, and they returned to this Court for resumption of their preliminary injunction proceedings. Those added efforts were successful before this Court, but their ultimate success is not yet assured (because of the pending appeal). In view of that uncertainty, this order limits its award of reasonable attorneys' fees to plaintiffs to cover only the efforts expended by their attorneys through October 29, 1982.

Plaintiffs' attorneys have provided extensive documentation of their time spent and the purposes to which the time was devoted. Their documentation includes both a daily time catalog for each attorney (filed July 29, 1983) and a subject matter breakdown for each attorney and each phase of the litigation (filed November 15, 1983). In addition they provided copies of their original timesheets to defendants and now this Court (filed November 16, 1983).

Defendants' objections to the fee request are vague and generalized, alleging for example (City Def. Mem. 8) "pretrial uncertainties on the part of Plaintiffs' counsel." Plaintiffs' attorneys however have not submitted fee requests for hours spent on duplicative efforts,[6] and they have invited a further deduction in the interests of. fairness (Motion ¶ 6):

> 6. Given the fact that Plaintiffs employed two to four lawyers throughout the litigation, we suggest that a reduction of hours—perhaps 10% might be appropriate to account for unavoidable duplication.

This Court finds plaintiffs' attorneys have made "a good faith effort to exclude from [their] fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission" (*Hensley*, 103 S.Ct. at 1939–40).

Plaintiffs' submission (including their attorneys' detailed affidavits as to their qualifications, plus the affidavits of other attorneys in private practice) also convincingly supports the reasonableness of the requested hourly rate of $135 for each lawyer. This Court has given full consideration to all the factors mandated by our Court of Appeals, and that $135 figure represents a conservative award for the aggregate of time spent both in and out of court. Although it is of course *permissible* for lawyers and law firms to perpetuate the custom of charging a premium for in-court time (the legal equivalent of combat pay during wartime?), it cannot fairly be said to be *mandated* in light of the dramatic changes in timekeeping and billing practices since that custom first arose.[7] *See Strama v. Peterson*, 561 F.Supp. 997, 1000 n. 7 (N.D.Ill.1983).

---

**6.** Plaintiffs state (Fees Motion 3 n. *):

> Some hours—such as Taylor's attendance at the injunction hearing—having [sic] already been eliminated in the interest of avoiding the appearance of duplication. Moreover, Assist-

ant Public Defender Robert Isaacson has not billed for his hours.

**7.** When this Court was in private practice his firm established a normal billing rate for each lawyer, chargeable irrespective of the nature of

It may well be that plaintiffs might ultimately be entitled to a multiplier for the time included in the current award. That fact however (and a fortiori the amount of any possible multiplier) can be better evaluated at a later stage in this litigation—certainly at least when the pending appeal is resolved. Again in the interest of conservatism—imposing on defendants an amount awardable against them in all events—no multiplier will be awarded now. Judgment is simply reserved on that subject.

*Conclusion*

Under the principles announced in this opinion, the calculation of the appropriate awards appears to be as follows:[8]

| Attorney | Hours |
|---|---|
| Haas | 432.50 |
| Deutsch | 291.50 |
| Cunningham | 208.65 |
| Taylor | 30.15 |
| TOTAL | 962.80 |

$135 x 0.9 x 962.80 = $116,980.20

All parties are directed to file on or before December 5, 1983 their statements as to (1) whether that calculation reflects any arithmetical error, (2) the proper allocation as between City Defendants and County Defendants and the reasons supporting the proposed allocation and (3) the proposed payment date (also including a statement of any justification for requested delay). This Court will promptly issue an order for payment.

APPENDIX

On November 17, 1983 (literally the day before the status hearing at which this Court's ruling was scheduled to be announced, and after the foregoing opinion had already been prepared) both sets of defendants submitted (without asking leave of court) additional objections to plaintiffs' fees request. Those submissions thus had not been called to this Court's attention before the opinion date, and this Court has been provided no explanation whatever as to why defendants' current objections were not brought to the Court's attention much earlier.[1]

Nonetheless this Court has considered defendants' belatedly-tendered objections, and it has determined the foregoing opinion as already drafted dealt with all but three of defendants' arguments.[2] Those new and unaddressed issues were:

1. Plaintiffs may lose the pending appeal on the ground there is no "case or controversy" involving them. If that were to occur, it was not plaintiffs but some unspecified others who prevailed (City Nov. 17 Mem. 2).

2. Specific hours were spent in unjustifiably hampering defendants' discovery efforts and should not be compensated (*id.* at 3–4).

3. Other unidentified duplication of time was reflected in plaintiffs' submissions (County Nov. 17 Mem. 2).

City's first argument deserves short shrift. Plaintiffs' attorneys represent a class, not just the named plaintiffs. If the class action is procedurally defective as claimed (and for current purposes this Court need not address such cases as *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63

---

the services devoted to billable matters (and in the case of litigators, that rate applied to in-court and out-of-court time alike). That practice is typical of most of the firms with which this Court is familiar. And lest it be thought this is simply an application of some sort of judicial notice, it should be emphasized that the uncontroverted *evidence* here (the affidavits of other lawyers, tendered by plaintiffs) does not require—or even support—the distinction urged by defendants.

8. All the parties are invited to verify these figures to make certain they are properly drawn from plaintiffs' submissions.

1. Plaintiffs' counsel apparently provided defendants' counsel with the time records supporting their motion a few months ago, promptly after the motion was filed. Yet as already said there was no indication to this Court of any issues in dispute (except as covered by the parties' previously-filed legal memoranda) until the day before the foregoing opinion was due to be issued.

2. See the last paragraph of this Appendix for a further possible exception, as to which this Court considers the failure to make a timely submission constitutes a waiver.

L.Ed.2d 479 (1980) and *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) on that score), such a defect does not deprive plaintiffs of success based on informal relief unless the claim was "frivolous, unreasonable, or groundless," *Harrington*, 656 F.2d at 267, in the first instance. Because plaintiffs' claim for preliminary relief *beyond* the scope of defendants' October 29, 1982 telex order was ultimately successful in this Court, plaintiffs' claim that triggered that telex (which marks the watershed for the current award) was a fortiori not "groundless."

As for the other two contentions, under the circumstances already described this Court might well hold them waived as untimely filed. Certainly that finding is justifiable—and is hereby made—as to City Defendants' other arguments under "Rates" (Nov. 17 Mem. 4–6), for City Defendants do not even suggest any justification for having previously failed to address those known questions on the reasonable briefing schedule established by this Court. However, this Court will grant the request for a hearing on the second and third numbered claims identified two paragraphs back. This case is set for a status conference at 9 a.m. December 9, 1983 to discuss the scheduling of that hearing.[3]

---

**3.** Counsel should be mindful of the "fees on fees" problem, in which time spent in a fees hearing may possibly generate further allowable fees. It is in everyone's interest to narrow the issues for evidentiary hearing as much as possible, by prior stipulations or otherwise.